**M. FINE & SONS MANUFACTURING CO., Inc.**

v.

**UNITED STATES.**

No. 384–56.

United States Court of Claims.

Dec. 3, 1958.

Sheila M. Roehner, New York City, for plaintiff. Simon Gluckman, New York City, on the brief.

George Willi, III, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., for defendant. James P. Garland, Baltimore, Md., on the brief.

MADDEN, Judge.

This suit involves a claim for refund of income and excess profits taxes which are alleged to have been erroneously collected from plaintiff for the years and in the amounts as follows:

| | |
|---|---|
| 1943 | $ 6,104.51 |
| 1944 | 8,461.13 |
| 1945 | 12,917.93 |
| 1946 | 2,497.83 |

While the years in question are admittedly barred by section 322(b) of the Internal Revenue Code because the claims for refund were not filed within three years from the time the returns were filed, or within two years from the time the taxes were paid, plaintiff contends that under the circumstances of its case it is entitled to the relief provided for in section 3801 and section 3807 of the Internal Revenue Code of 1939 (26 U.S.C. 1952 ed.).

In December 1942 the Paducah Industries Committee, Inc., contributed to the plaintiff a factory and the land on which it stood in Paducah, Kentucky, in furtherance of a project for the employment of a large number of persons in that city. The basis of the factory building to the transferor, Paducah Industries Committee, Inc., at the time of the transfer was $77,876.05. Since its acquisition in 1942 plaintiff has continuously used the Paducah factory for the manufacture of its products for sale in the ordinary course of its trade or business.

In April, 1944, the Vicksburg Chamber of Commerce contributed to the plaintiff a factory in Vicksburg, Mississippi, in furtherance of a like project for the employment of large numbers of persons in the city of Vicksburg. The basis to the transferor, the Vicksburg Chamber of Commerce, at the time of the transfer to plaintiff, was $76,000. Since its acquisition in 1944 the plaintiff continuously used the Vicksburg factory for the manufacture of its products for sale in the ordinary course of business until 1947 when plaintiff sold the Vicksburg factory.

During the years 1943, 1944, 1945 and 1946 plaintiff recorded on its books depreciation on the Paducah and the Vicksburg factories as part of its cost of goods sold, using the transferors' bases as not-

ed above. However, plaintiff did not include in its income and excess profits tax returns any item representing depreciation of the two factories because during those years it was the established policy of the Commissioner of Internal Revenue to deny to taxpayers a right to a deduction for depreciation on property which had been contributed to them by communities. Detroit Edison Co. v. Commissioner, May, 1943, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286. In the Detroit Edison case the Supreme Court held that extension of facilities of a public utility, which extension had been paid for by its customers and became its property, had no basis to the public utility. Plaintiff herein did include, however, its transferors' bases of the Paducah and Vicksburg factories in computing its equity invested capital for the purposes of determining its excess profits tax credit on its excess profits tax returns. On an examination of its 1943, 1944 and 1945 income and excess profit tax returns in early 1947 by an agent of Internal Revenue, the plaintiff asserted its right to depreciation on the two factories in accordance with its books and records, but that demand was denied by the agent. The agent also disallowed the use by plaintiff of the transferors' bases in computing its equity invested capital and, accordingly, a deficiency in excess profits taxes for those years was assessed against plaintiff. The deficiencies so assessed for the years 1943, 1944 and 1945 were paid in 1947.

In October 1947 the plaintiff sold its Vicksburg factory and reported to Internal Revenue a zero basis for gain.

On May 15, 1950, the Supreme Court decided Brown Shoe Company, Inc., v. Commissioner, 339 U.S. 583, 70 S.Ct. 820, 94 L.Ed. 1081. In that case the Supreme Court held that property contributed by a community to a taxpayer constituted a contribution to the taxpayer's capital and that accordingly the transferor's basis was the proper basis to the taxpayer, under section 113(a)(8) (B) of the Internal Revenue Code of 1939, for depreciation, and that under section 718(a) the taxpayer was entitled to the transferor's basis in computing its equity invested capital.

In November 1950 plaintiff filed a timely claim for refund for the year 1947 asserting its right under section 113(a)(8)(B) to take the transferors' bases for computing (1) gain realized on the sale of the Vicksburg factory in 1947 and (2) depreciation for that year on the Paducah factory. The total claim was in the amount of $6,455.62. This claim for refund was allowed in the amount of $5,729.07, made up of two items: (1) $2,336.28, which was 3% of $77,876.05, the transferor's cost basis, and was the exact amount named in the plaintiff's claim for refund as to the Paducah factory, and was the exact amount set up by the plaintiff on its own books as factory depreciation for each year of its ownership of the property and: (2) $3,392, the amount by which the plaintiff overpaid its tax on the sale of the Vicksburg plant when it used a cost basis of zero in its return instead of its transferor's cost basis of $76,000, reduced by depreciation allowable though not taken on that factory for the years 1944, 1945, and 1946. It will be remembered that if the plaintiff had attempted to take depreciation on its tax returns for those years, it would not have been permitted, as the doctrine and the practice were at that time.

In August 1952 the plaintiff filed timely claims for refund for the years 1943, 1944, 1945 and 1946 pursuant to section 3801 and section 3807 of the Internal Revenue Code of 1939.

Section 3801 provides in pertinent part as follows:

"Sec. 3801. *Mitigation of effect of limitation and other provisions · in income tax cases.*

"(a) Definitions. For the purpose of this section—

"(1) Determination. The term 'determination under the income tax laws' means—

\* \* \* \* \* \*

"(C) A final disposition by the Commissioner of a claim for refund. For the purposes of this section a claim for refund shall be deemed finally disposed of by the Commissioner—

"(i) as to items with respect to which the claim was allowed, upon the date of allowance of refund or credit or upon the date of mailing notice of disallowance (by reason of offsetting items) of the claim for refund, and

\* \* \* \* \* \*

"(b) Circumstances of adjustment. When a determination under the income tax laws—

"(1) Requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer; or

\* \* \* \* \* \*

"(5) Determines the basis of property for depletion, exhaustion, wear and tear, or obsolescence, or for gain or loss on a sale or exchange, and in respect of any transaction upon which such basis depends there was an erroneous inclusion in or omission from the gross income of, or an erroneous recognition or nonrecognition or gain or loss to, the taxpayer or any person who acquired title to such property in such transaction and from whom mediately or immediately the taxpayer derived title subsequent to such transaction—

and, on the date the determination becomes final, correction of the effect of the error is prevented by the operation (whether before, on, or after May 28, 1938) of any provision of the internal-revenue laws other than this section and other than section 3761 (relating to compromises), then the effect of the error shall be corrected by an adjustment made under this section. \* \* such adjustment shall be made only if there is·adopted in the determina-

tion a position maintained by the Commissioner (in case the amount of the adjustment would be refunded or credited in the same manner as an overpayment under subsection (c)) or by the taxpayer with respect to whom the determination is made (in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under subsection (c)), which position is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be. \* \* \*

"(c) Method of adjustment. The adjustment authorized in subsection (b) shall be made by assessing and collecting, or refunding or crediting, the amount thereof, to be ascertained as provided in subsection (d), in the same manner as if it were a deficiency determined by the Commissioner with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year with respect to which the error was made, and as if on the date of the determination specified in subsection (b) one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year.

"(d) Ascertainment of amount of adjustment. In computing the amount of an adjustment under this section there shall first be ascertained the tax previously determined for the taxable year with respect to which the error was made. The amount of the tax previously determined shall be the ·excess of—

"(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return (determined as provided in section 271(b)(1) and (3), if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed

(or collected without assessment) as a deficiency over—

"(2) the amount of rebates, as defined in section 271 (b)(2), made. There shall then be ascertained the increase or decrease in the tax previously determined which results solely from the correct exclusion, inclusion, allowance, disallowance, recognition, or nonrecognition, of the item, inclusion, deduction, credit, gain or loss, which was the subject of the error. The amount so ascertained (together with any amounts wrongfully collected, as additions to the tax or interest, as a result of such error) shall be the amount of the adjustment under this section."

Plaintiff took the position that the allowance of its claims for refund in 1947, described above, was a "determination" within the meaning of section 3801(a)(1)(C), and that the determination of the Commissioner had created the "circumstances of adjustment" within the meaning of section 3801(b)(1) and (5) for the years 1943, 1944, 1945 and 1946.

Plaintiff's claims for refund for the years 1943, 1944 and 1945, included a claim for refund of excess profits taxes under section 3807 of the Internal Revenue Code of 1939, which provided for adjustments of excess profits taxes for years to which section 3801 was found to be applicable.

In September 1954 defendant disallowed in full plaintiff's claims for refund for the years 1943, 1944, 1945 and 1946. Under Regulations 111, Sec. 29.-22(a)–5, of the Commissioner plaintiff was prohibited from subtracting from gross receipts depreciation on its factories as an item of the cost of goods sold in determining its gross income on its income tax returns for the years, 1943, 1944, 1945 and 1946 even though plaintiff did so on its books of account. In 1953, however, the Commissioner promulgated Treasury Decision 6028, retroactively eliminating the former express prohibition against the inclusion of depreciation. The Commissioner also issued Revenue Ruling 141, explaining that Treasury Decision 6028 made the regulations on cost of goods sold consistent with the regulations on the valuation of inventories. Inasmuch as plaintiff had consistently on its books treated depreciation as part of its cost of goods sold, plaintiff did not need to secure the consent of the Commissioner before computing his income for tax purposes in accordance with the new Treasury Decision. Section 41 of Internal Revenue Code of 1939 (26 U.S.C.1952 ed., Sec. 41).

Plaintiff urges that the erroneous omission of factory depreciation from the computation of its cost of goods sold resulted in an overstatement of plaintiff's gross income for the years in question so that there was an erroneous inclusion of gross income within the meaning of section 3801 of the Code. This is true. We look then to the other requisite of section 3801(b)(1), which is that the Commissioner's determination

"Requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year * * *."

So far as concerns the Paducah factory, we do not find this requisite. The Commissioner allowed, for the year 1947, the 3% straight line depreciation claimed by the plaintiff. He did not reduce it by so much as a penny, nor did he add so much as a penny to the plaintiff's 1947 income because the plaintiff had not taken depreciation for the earlier years.

The plaintiff urges that somehow something was included in the amount determined for 1947 which overlapped the amounts included, because not deducted, in the earlier years. But the arithmetic of the situation denies the assertion.

There is some indication that the plaintiff means that if the Commissioner did not include in the 1947 determination something already taxed in the earlier years he should have done so, and the situation must be treated as if he had done so. There would seem to be weaknesses

in this argument, if indeed it is the plaintiff's argument. Section 3801(b)(1) applies to a determination which "requires" the inclusion etc. If the Commissioner by reason of error, or charity, or in order not to bring the case within the scope of section 3801 refrains from making a determination which results in overlapping taxes, the taxpayer has not, in fact, been subjected to inconsistent treatment and section 3801 does not, by its terms, apply.

It may be that the plaintiff is relying on section 114(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 114(a). It provides that the basis for depreciation of property

"shall be the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such property."

Then looking at section 113(b) we find that the adjustment in the basis for the purpose of determining the gain upon property sold, includes the substraction from the basis, not only of depreciation actually taken in prior years, but also of depreciation "allowable", i. e., which could have been taken, whether actually taken or not.

If section 114(a) with its reference back to section 113(b) were taken literally, it would seem to mean that a taxpayer could never use straight line depreciation, but must compute depreciation upon a new and diminished base for each year, increasing the percentage of depreciation as the base diminished, in order to fully depreciate the property within the number of years of its predicted useful life.

■■ We judicially know that this is not, in fact, the method used in computing depreciation in most tax returns, and that it would impose a useless burden upon taxpayers and the Government if it were required. But the short answer in the instant case is that the plaintiff did not, in fact, follow this method in computing its claim for refund for 1947, and the Commissioner made the refund, so far as the Paducah factory was concerned, of the exact amount claimed by the plaintiff.

■ With respect to the Vicksburg property which the taxpayer acquired in 1944 and sold in 1947, the Commissioner ruled that the taxpayer's basis for determining and reporting gain or loss on the sale, was the transferor's 1944 basis which basis, however, must be reduced by previously unallowed yearly depreciation from the year of acquisition to the year of sale. The result of this action by the Commissioner was to include in taxpayer's gross income and to tax in 1947 income which, because of the disallowance of any depreciation deductions in prior years, had already been included in taxpayer's gross income and taxed, thus falling within the "Circumstances of adjustment" provided for in section 3801(b)(1) of the Code.

We are unable to agree with defendant's position that the holdings of this court in Gooch Milling & Elevator Co. v. United States, 78 F.Supp. 94, 111 Ct.Cl. 576, and H. T. Hackney Co. v. United States, 78 F.Supp. 101, 111 Ct.Cl. 664, are inapplicable to the present case. Depreciation allowances are as much constitutent elements in the determination of the cost of goods sold as the inventories with which the court was concerned in the Gooch and Hackney cases, and the erroneous disallowance by the Commissioner of one of the constituent elements (depreciation) in determining this plaintiff's cost of goods sold resulted in an erroneous inclusion in gross income herein under the holdings in the above cases.

The Government urges that, under the doctrine which we are applying in the case of the Vicksburg factory, the statute of limitations will always be nullified when, as here, the statute has run against depreciation which could have been, but was not, taken, and the property is later sold and the Commissioner reduces the basis and thus increases the capital gains tax by the amount of depreciation "allowable" but not taken in the years barred by the statute. The argument is a cogent one, but we think the

situation is included within the remedial scope of section 3801.

Defendant's motion for rehearing is granted as indicated in this opinion, and the opinion of June 4, 1958 is vacated and withdrawn. The motions of both parties for summary judgment are therefore granted in part and denied in part.

Plaintiff is entitled to recover, together with interest provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.