UNITED STATES of America,
Appellant,

v.

W. A. RUSHLIGHT, Raymond G. Rushlight, and W. A. Rushlight, Executor of the Estate of Betty Rushlight, Deceased, Appellees.

No. 17076.

United States Court of Appeals
Ninth Circuit.

June 17, 1961.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, and Richard J. Medalie, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., and Edward J. Georgeff, Asst. U. S. Atty., Portland, Or., for appellant.

Denton G. Burdick, Jr., and Hutchinson, Schwab & Burdick, Portland, Or., for appellees.

Before HAMLIN, JERTBERG and KOELSCH, Circuit Judges.

JERTBERG, Circuit Judge.

This appeal involves refunds of federal income taxes for the taxable years 1946 through 1950. Jurisdiction was conferred on the district court by Title 28 U.S.C.A. § 1346(a). This Court has jurisdiction under Title 28 U.S.C.A. §§ 1291 and 1294.

In this opinion we will refer to the appellant as the "government" and to the appellees as the "taxpayers".

The taxpayers filed refund claims for the years 1946 through 1950, based on adjustments for (1) depreciation on certain farm assets, and (2) the elimination of gain on the sale of equipment, depreciation on the buildings, furniture, and fixtures, and the loss on salvaged equipment of a partnership steel works. The claims originated in certain tax adjustments made by the Tax Court and the Commissioner of Internal Revenue with respect to taxpayers for the years 1942 through 1945.

The refund claims were disallowed by the Commissioner. Following trial in the district court, judgment was entered for taxpayers, awarding all of the refunds claimed, in an aggregate sum of $5,845.00, together with interest at the rate of six per cent per annum from the appropriate dates.

The facts are not in dispute. The only question presented on this appeal is whether Section 3801 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3801, mitigates the effect of the expiration of the applicable statute of limitations so that taxpayers may make certain adjustments for depreciation on certain farm assets and steel mill property, for the elimination of capital gain on the sale of steel mill equipment, and for the loss on salvaged equipment with respect to the steel mill, in order to receive refunds of income taxes for the taxable years 1946 through 1950.

The portions of Section 3801 of the Internal Revenue Code of 1939 relevant to this appeal are:

"§ 3801. Mitigation of effect of limitation and other provisions in income tax cases.

"(a) *Definitions.*—For the purpose of this section—

"(1) Determination.—The term 'determination under the income tax laws' means— * * *

"(B) A decision by the Tax Court of the United States or a judgment, decree, or other order by any court of competent jurisdiction, which has become final; or

"(C) A final disposition by the Commissioner of a claim for refund. * * *

* * * * * *

"(b) Circumstances of adjustment.—When a determination under the income tax laws—

"(1) Requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer; or

* * * * * *

"(5) Determines the basis of property for depletion, exhaustion, wear and tear, or obsolescence, or for gain or loss on a sale or exchange, and in respect of any transaction upon which such basis depends there was an erroneous inclusion in or omission from the gross income of, or an erroneous recognition or nonrecognition or gain or loss to, the taxpayer or any person who acquired title to such property in such transaction and from whom mediately or immediately the taxpayer derived title subsequent to such transaction; or

and, on the date the determination becomes final, correction of the effect of the error is prevented by the operation (whether before, on or after May 28, 1938) of any provision of the internal-revenue laws other than this section and other than section 3761 (relating to compromises), then the effect of the error shall be corrected by an adjustment made under this section. Except in cases described in paragraphs (6) and (7), such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the amount of the adjustment would be refunded or credited in the same manner as an overpayment under subsection (c)) or by the taxpayer with respect to whom the determination is made (in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under subsection (c)), which position is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or non-recognition, as the case may be. * * *."

The refund claims are best explained by reference to three unreported determinations by the Tax Court in 1953.

Adjustments for 1942 through 1945

A. The Farm Assets

During the years involved in this action, taxpayer W. A. Rushlight was a stockholder in A. G. Rushlight & Company, a corporation. On August 6, 1953 the corporation was required to pay additional taxes for the years 1943 and 1944 by order of the Tax Court [A. G. Rushlight & Company, Docket No. 20053]. In the proceedings before the Tax Court, the Commissioner had taken the position that certain amounts, equal to the sum of $26,135.32, which had been paid by the corporation for certain farm assets for the benefit of W. A. Rushlight, were not deductible as ordinary and necessary business expenses by the corporation, and were in fact dividends paid to the taxpayer, W. A. Rushlight. The corporation was ordered to pay additional taxes for the years 1943 and 1944.[1]

The tax returns of W. A. Rushlight for the taxable years 1942, 1943 and 1945 [W. A. Rushlight, Docket No.

---

1. Any tax liability of the corporation is not involved in the present action.

20023], and 1944 [W. A. Rushlight and Betty Rushlight,[2] Docket No. 20022], were also the subject of proceedings before the Tax Court, in which the Commissioner took the same position with respect to the expenditures and farm assets that he had taken in the case of the corporation.

On August 6, 1953, the Tax Court decided that there had been no deficiency in income tax for 1942; that there had been a deficiency of $68,741.76 in income tax and a penalty of $3,941.71 for 1943; and that there had been an overpayment of income tax of $5,299.54 for 1944.

The district court found that: "In connection with the income tax liability of the plaintiff W. A. Rushlight for the years 1942, 1943, 1944 and 1945, as determined in the decisions of the Tax Court of the United States, as aforesaid, there was added to the income of W. A. Rushlight, as reported on his tax returns for said years, the sum of $26,-135.32. Said sum was equal to the total cost of certain depreciable farm assets which had either been purchased for W. A. Rushlight by A. G. Rushlight & Co., an Oregon corporation in which W. A. Rushlight was a stockholder, or had been purchased by W. A. Rushlight and charged to expense. In said Tax Court proceedings the Commissioner took the position that such amounts paid for such farm assets were not deductible as ordinary and necessary business expense, and that the income of the said W. A. Rushlight for said years, as reported, should be increased by such amount. Such position was adopted by the said Tax Court in its decision as aforesaid."

This statement is substantially equivalent to the agreed statement of the parties in the pre-trial order as to the original tax treatment of the farm assets in the hands of W. A. Rushlight. From our examination of the record as a whole, we conclude that insofar as the tax treatment of the farm assets is concerned, the Tax Court in its determination adopted the position of the Commissioner that the farm assets should be treated as a capital asset with a cost basis of $26,135.32 in the hands of W. A. Rushlight.

Taking the $26,135.32 as the cost basis for the farm assets the district court set down a schedule which reflected the amount of depreciation which would have been allowable to taxpayer if timely claimed, 1946 through 1950.

B. The Partnership Steel Works

From 1942 through 1950, the W. A. Rushlight Company was a partnership, in which W. A. Rushlight was a 50 per cent partner and Raymond G. Rushlight was a 40 per cent partner. On its federal partnership tax return for the calendar year 1945, the W. A. Rushlight Company had deducted the sum of $105,305.51 as a claimed abandonment loss of a steel works, and further took the position that the equipment, buildings, furniture and fixtures of the steel works were worthless.

On the basis of his distributive partnership share of W. A. Rushlight Company's claimed loss for 1945, Raymond G. Rushlight claimed a net operating loss for 1945, and, by virtue of the loss carryback provisions of Section 122(b) of the Internal Revenue Code of 1939, 26 U.S.C.A., § 122(b), filed a timely claim for refund for 1943. On November 18, 1953, the Commissioner disposed of the refund claim, and, with respect to this disposition, redetermined Raymond G. Rushlight's income tax liability for the years 1942 through 1945.

In the disposition of Raymond G. Rushlight's refund claim for 1943, as in the Tax Court determination with respect to W. A. Rushlight on August 6, 1953 [W. A. Rushlight, Docket No. 20023, supra], the Commissioner took the position that the claimed abandonment loss should be substantially disallowed, and that the partnership had an income tax

2. Betty Rushlight is the deceased wife of W. A. Rushlight, and W. A. Rushlight is the executor of her estate. We deem it unnecessary to make further reference in this opinion to Betty Rushlight or her estate.

basis in the steel works as of December 31, 1945, of $61,875.60 for machinery and equipment and $30,596.80 for buildings, furniture, and fixtures, or a total basis of $92,472.40. This position with respect to W. A. Rushlight was adopted by the Tax Court.

Taking the $92,472.40 as the cost basis for the steel works, the district court in the present case set down a schedule which reflected the reductions in the income of the partnership, as originally reported, and in the distributive partnership shares allowable to W. A. Rushlight and Raymond G. Rushlight, which resulted from the allowable deductions with respect to (1) the elimination of capital gains for the sale of equipment (originally reported without basis) for the years 1946 and 1947, (2) depreciation on buildings, furniture, and fixtures for the years 1946 through 1950, and (3) the loss on salvaged equipment for the year 1950.[3]

### Adjustments for 1946

During the time that the tax returns for W. A. Rushlight, Raymond G. Rushlight, and the W. A. Rushlight Company were being audited, both partners filed separate timely claims for refund for the year 1946 to protect their rights, on the ground that, if certain claimed deductions for the years 1942 through 1945 were disallowed, they might be properly claimed for 1946. The Commissioner acted on Raymond G. Rushlight's claim on March 29, 1954, determining that his income should be reduced by the sum of $2,965.43, his distributive share of the elimination of capital gain on the sale of the steel works' equipment originally reported without basis, and by the further sum of $1,627.99, his distributive share of depreciation on the steel works' buildings, furniture, and fixtures.[4]

On June 25, 1954, the Commissioner acted upon W. A. Rushlight's claim and refunded the sum of $3,160.32 in tax for 1946. The refund was based on the determination that W. A. Rushlight was entitled to have his income reduced by the sum of $2,594.75, his distributive share of the elimination of capital gain on the sale of the steel works' equipment originally reported without basis, and by the further sum of $2,034.98, his distributive share of depreciation on the steel works' buildings, furniture, and fixtures. As to the deduction allowable for depreciation of farm assets for 1946, the Commissioner construed taxpayer's refund claim as not broad enough to cover the additional farm depreciation.

### Adjustments for W. A. Rushlight and Betty Rushlight for 1949, 1950 and 1951

While W. A. Rushlight's refund claim was pending, the Commissioner voluntarily had the individual income tax returns for W. A. Rushlight and Betty Rushlight for the open years 1949, 1950 and 1951 examined. On the basis of the Internal Revenue agent's report of April 8, 1954, the Commissioner voluntarily refunded to taxpayers, prior to June 30, 1954, the amount of over-assessments set forth in the report. The refunds were based on the allowance to taxpayers of the farm depreciation and reductions in partnership income.

### The Refund Claims in the Present Case

On June 30, 1954, taxpayers W. A. Rushlight, Betty Rushlight, and Raymond G. Rushlight filed refund claims for the years 1946 through 1950 with the District Director of Internal Revenue for the District of Oregon. Although taxpayers realized that the statute of limitations [Sec. 322(b) (1) of the 1939 Code, 26 U.S.C.A. § 322(b) (1)] had

---

3. The loss on salvaged equipment related to the loss sustained in the sales of portions of the equipment following the dismantling of the steel works during 1946.

4. Since, however, Raymond G. Rushlight's net operating loss deduction which was

not allowable made his net income for 1946, as adjusted, more than the net income which he had reported on his 1946 individual return, the claimed refund was disallowed.

run on their claims, they invoked Section 3801 of the Code to mitigate the effect of the statute of limitations. The claims were as follows:

| Taxable Year | Taxpayers | Refund Claimed | Farm Assets Depreciation | Steel Works Elimination of Gain | Steel Works Depreciation | Steel Works Loss on Salvage |
|---|---|---|---|---|---|---|
| 1946 | W. A. Rushlight | $1,312.64 | $2,159.31 | | | |
| 1947 | W. A. Rushlight | $1,345.88 | $2,079.06 | $500.78 | $1,526.24 | |
| 1947 | R. G. Rushlight | $ 400.00 | | $572.32 | $1,627.99 | |
| 1948 | W. A. Rushlight and Betty Rushlight | $ 922.10 | $2,079.06 | | | |
| 1948 | R. G. Rushlight | $ 245.66 | | | $1,026.30 | |
| 1949 | R. G. Rushlight | $ 129.04 | | | $ 821.04 | |
| 1950 | R. G. Rushlight | $1,313.03 | | | $ 543.11 | |
| | | | | | $ 402.56 | $4,979.39 |

On June 8, 1956, taxpayers were sent statutory notices of disallowance of their claims on the ground that Section 3801 was not applicable and that therefore the statute of limitations had run on all the claims. Thereupon taxpayers instituted the present action.

The district court held that, as to W. A. Rushlight, the Tax Court decisions [Docket Nos. 20022 and 20023, supra] and the action of the Commissioner on W. A. Rushlight's tax refund claim for 1946, and, as to Raymond G. Rushlight, the actions of the Commissioner in his tax refund claims for 1943 and 1946, "constituted 'determinations under the income tax laws' as that term is defined in Section 3801(a) (1) (B) and (C) of the Internal Revenue Code of 1939"; that these "determinations constituted 'circumstances of adjustment' as that term is defined in Section 3801(b)"; and that the "determinations adopted positions of the Commissioner * * * which are inconsistent with" (1) "the erroneous failure of * * * W. A. Rushlight to deduct farm depreciation * * *," (2) "the erroneous failure * * * [of both taxpayers] to deduct depreciation of the steel plant building, furniture and fixtures * * *," (3) "the erroneous inclusion [by both taxpayers] of capital gain on account of the sale of equipment without basis * *," and (4) "the erroneous failure of * * [Raymond G. Rushlight] to deduct a loss on salvage equipment."

The government concedes that taxpayers overpaid taxes and are entitled to the refunds claimed if Section 3801 applies to relieve the effect of the statute of limitations.[5] Therefore, the only question on this appeal is whether the remedial effect of Section 3801 extends to the adjustments sought on closed returns by these taxpayers.[6] The parties agree that this question is controlled by the 1939 Code, and that the amendments to Section 3801 in the 1954 Code do not apply.[7]

In allowing the application of Section 3801 to the adjustments sought by these taxpayers, the district court relied on is conception of the policy behind Section 3801, "to provide a fair and workable formula under which taxpayers and the government would be given relief from the unfair and unjust results occasioned by corrections, by final determinations, or by errors of either the taxpayers or the Commissioner, or both." Whatever may be the policy behind Section 3801, this statute does not purport to relieve against all inequities occasioned by the statute of limitations. One claiming the benefits of Section 3801 must assume the burden of proving its applicability. The district court should have required these taxpayers to meet the specific requirements of the statute and to bring themselves within one of the specified circumstances of adjustment. See Olin Mathieson Chemical Corporation v. United States, 7 Cir., 1959, 265 F.2d 293.

Section 3801 requires that there must be a final "determination under the in-

5. Under Section 322(b), Internal Revenue Code of 1939, 26 U.S.C.A. § 322(b), a claim for refund must be filed within three years from the time the return was filed, or within two years from the time the tax was paid.

6. While Section 3801, if applicable, removes the bar of this statute of limitations, it, in effect, establishes a new one-year statute of limitation running from the date of the "determination" referred to in that section. See Section 3801(c), Internal Revenue Code of 1939.

7. Section 1315, Title 26 U.S.C.A. provides: "(a) In general.—This part shall apply only to determinations (as defined in section 1313(a)) made after the 90th day after the date of enactment of this title. "(b) Transitional provision.—Notwithstanding any other provisions in this title, section 3801 of the Internal Revenue Code of 1939 shall apply to determinations (as defined in subsection (a) of such section) made on or before such 90th day as if this title had not been enacted." All determinations in the present case became final prior to 90 days following August 16, 1954, the date of the enactment of Sections 1311–1315 of the 1954 Code. Accordingly, taxpayers must rely on Section 3801 of the 1939 Code and cannot rely on the 1954 Code.

come tax laws," as defined by subsection (a) (1).

Under subsection (b) the determination must involve certain "Circumstances of adjustment." The section lists seven circumstances of adjustment. The taxpayers rely upon subsection (b) (1) and (b) (5) as the basis of their claim. Subsection (b) (1) provides that (a) the determination must require an "inclusion in gross income;" (b) the inclusion must be that of an "item;" and (c) the item must have been "erroneously included in the gross income of the taxpayer for another taxable year \* \* \*."

Subsection (b) (5) provides that (a) the determination must determine "the basis of property;" (b) there must be some "transaction upon which such basis depends;" and (c) "in respect of" such a transaction there must be "an erroneous inclusion in or omission from the gross income of, or an erroneous recognition or nonrecognition of gain or loss to, the taxpayer \* \* \*."

Subsection (b) further provides that there must be "adopted in the determination a position maintained by the Commissioner \* \* \*, which position is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or non-recognition \* \* \*."

Subsection (b) finally requires that "on the date the determination becomes final, correction of the effect of the error is prevented by the operation \* \* \* of any provision of the internal-revenue laws \* \* \*." In the present case this position would have relevance to the statute of limitations.

Under Section 3801 the bar of the statute of limitations is removed if it appears that (1) a "determination" has been made; (2) that such determination adopts one of the seven circumstances of adjustment described in subsection (b);

and (3) except where the determination adopts a circumstance of adjustment described in paragraphs (6) and (7) of subsection (b), such determination adopts a position maintained by the Commissioner which is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or non-recognition, as the case may be. See Hagan v. United States, 9 Cir., 1956, 239 F.2d 141.

We will first consider the problem as it relates to the "farm assets".

■ We are satisfied that the 1953 Tax Court determination was a final determination within the meaning of Section 3801(a),[8] and that this determination is the relevant determination for purposes of deciding whether any of the specified circumstances of adjustment result from said determination.

■ Taxpayers argue the applicability of two circumstances of adjustment —Section 3801(b) (1) and Section 3801 (b) (5). We view this appeal as presenting basically problems of inconsistent treatment of basis, and as such, we think it should be considered under Section 3801(b) (5), a circumstance of adjustment addressed specifically to problems of basis, although we are aware of the decision of the Court of Claims in M. Fine & Sons Mfg. Co. v. United States, Ct.Cl.1958, 168 F.Supp. 769, in which a somewhat analogous situation was treated under Section 3801(b) (1).

In considering the applicability of Section 3801(b) (5), we are first faced with the contention of the government that the Tax Court, in determining the tax liabilities of W. A. Rushlight, Betty Rushlight, and A. G. Rushlight & Company, did no more than disallow a deduction by A. G. Rushlight & Company for the $26,135.32 cost of the farm assets. The government argues that this was not a determination of basis, but

8. Section 3801(a): "(1) Determination The term 'determination under the income tax laws' means—

\* \* \* \* \*

"(B) A decision by the Tax Court of the United States or a judgment, de-

cree, or other order by any court of competent jurisdiction, which has become final; or

"(C) A final disposition by the Commissioner of a claim for refund. \* \* "

merely a determination affecting basis, relying on James Brennen, 1953, 20 T.C. 495, and Sherover v. United States, D.C. S.D.N.Y.1956, 137 F.Supp. 778, affirmed per curiam 2 Cir., 1956, 239 F.2d 766. We do not deem it necessary to comment on the validity of this distinction, since it is our view that other language of Section 3801(b) (5) prevents its application.

Section 3801(b) (5) is not applicable because the error sought to be corrected is not an "erroneous inclusion in or omission from the gross income of, or an erroneous recognition * * * of gain or loss to, the taxpayer", and furthermore the error sought to be corrected is not "in respect of any transaction upon which such basis depends." It has been noted by commentators that the adjustment of depreciation deductions based on an erroneous determination by the taxpayer that capital assets be expensed, the type of error here involved, was not included in the language of Section 3801 (b) (5). In 1954, Section 3801(b) (5) was amended with the express intention of correcting this omission,[9] and Section 1312(6) of the 1954 Code, 26 U.S. C.A. § 1312(6), now permits adjustment for this type of error. However, as noted above, Section 3801(b) (5) determines the allowance of the adjustment in question.

Section 3801(b) (5) was adopted from Section 820 of the 1938 Revenue Code, which was the original legislation. The Senate Finance Committee stated that the proposed legislation was based upon four enumerated principles, the one of which dealing with basis problems stated as follows:

"(3) Disputes as to the basis of property should not allow the tax-payer or the Commissioner to obtain an unfair tax advantage by taking one position at the time of the acquisition of property and an inconsistent position at the time of its disposition." S.Rep. No. 1567, 75th Cong. 3d Sess. p. 48, quoted in Mertens Law of Federal Income Taxation, Section #14.02, Vol. 2, p. 9.

Although the House disagreed in part with the Senate Finance Committee, the conference agreement adopted the substance of the Senate provisions, with certain designated modifications, which are set out verbatim in Mertens Law of Federal Income Taxation, Vol. 2, Section #14.02, p. 12. See also Conference Committee Report No. 2330, 75th Cong. 3d Sess., pp. 58, 59. We have examined the conference report and find in it no modification of the principle above referred to.

The language of Section 3801(b) (5) fits the situation in which an inconsistent position as to basis is taken at the time of the disposition of the property, since a determination of basis at the time of disposition of the property can properly be said to be "in respect of any transaction upon which such basis depends," i. e. the transaction referred to is the transaction in which the property was acquired, and the basis of the property at the time of disposition can be said to depend on such transaction. However, the language of Section 3801(b) (5) is not flexible enough to apply when the determination of basis determines the basis at the time of acquisition of the property inconsistently with a previous treatment of said basis at the time of acquisition by the taxpayer, since there is no transaction upon which basis determined in the former determination can be said to depend.

9. "The type of errors described in the basis provision have been expanded to include the erroneous allowance of a deduction for the expense properly charged to capital account or, conversely, the erroneous charging to capital account of an expense properly deductible. Thus, if the taxpayer erroneously expenses certain costs which should be capitalized and later successfully contends that such amounts should have been added to the basis of the asset, an adjustment will be authorized under section 1311." H. Rep. No. 1337, 83d Cong.2d Sess. p. 4434 (1954). See also S.Rep. No. 1622, 83d Cong.2d Sess. 3 U.S.Code Congressional & Administrative News 1954, 83d Cong. 2d Sess. p. 5091.

Moreover, errors resulting from failure to take allowable depreciation deductions due to an erroneous expensing of capital items by the taxpayer are not specifically mentioned in Section 3801(b) (5). Taxpayers suggest that failure to take such depreciation is equivalent to an erroneous inclusion of income, relying on the Court of Claims decision in M. Fine & Son Mfg. Co. v. United States, supra, involving a 3801(b) (1) circumstance of adjustment. It is significant to note that the Fine case involved two factories, one of which the taxpayer sold prior to the determination and the other one of which was retained by the taxpayer. With respect to the factory which was sold at the time of determination, the court said [168 F.Supp. 774]:

"With respect to the Vicksburg property which the taxpayer acquired in 1944 and sold in 1947, the Commissioner ruled that the taxpayer's basis for determining and reporting gain or loss on the sale, was the transferor's 1944 basis which basis, however, must be reduced by previously unallowed yearly depreciation from the year of acquisition to the year of sale. The result of this action by the Commissioner was to include in taxpayer's gross income and to tax in 1947 income which, because of the disallowance of any depreciation deductions in prior years, had already been included in taxpayer's gross income and taxed * * *".

However, with respect to the factory which taxpayer retained, the court said:

"The plaintiff urges that somehow something was included in the amount determined in 1947 which overlapped the amounts included, because not deducted, in the earlier years. But the arithmetic of the situation denies the assertion.

"There is some indication that the plaintiff means that if the Commissioner did not include in the 1947 determination something already taxed in the earlier years he should have done so, and the situation must be treated as if he had done so. There would seem to be weaknesses in this argument, if indeed it is the plaintiff's argument. Section 3801(b) (1) applies to a determination which 'requires' the inclusion, etc. If the Commissioner by reason of error, or charity, or in order not to bring the case within the scope of section 3801 refrains from making a determination which results in overlapping taxes, the taxpayer has not, in fact, been subjected to inconsistent treatment and section 3801 does not, by its terms, apply."

The distinction made with respect to taxpayer's factories in the Fine case graphically illustrates the limitations on Section 3801(b) (5), even though the Fine case does not deal with that section. The point is that when taxpayer in the present case failed to take deductions for depreciation, the Commissioner did not, at the time of failure to take such deductions for depreciation, take any position resulting in an erroneous inclusion of income. No erroneous inclusion of income results until the Commissioner, at the time of disposition, reduces the basis by amounts attributable to depreciation for which no deductions have been taken. Only at this point will Section 3801(b) (5) apply.

The result which we reach is admittedly incongruous and inequitable. There is no good reason why a taxpayer who sells a capital asset should be allowed to correct errors in failing to take depreciation on closed returns, while a taxpayer who retains capital assets should not be allowed to correct such errors. Presumably Congress, in enacting the 1954 amendment, noted this deficiency in the original legislation and corrected it. But, what we emphasize is that the deficiency in the original legislation does not result solely from the awkwardness of the wording of Section 3801(b) (5). The legislative history indicates that Congress originally drew the statute too narrowly, and, whether through inadvertence and oversight or by design, Congress clearly failed to recognize and provide for relief

**518**

in the present situation, although such situation presents an inequity which should be within the bounds of a properly drawn remedial statute. Congress corrected their mistake in 1954. This Court cannot correct the effects of that mistake prior to the enactment of the 1954 Code without rewriting the legislation, which we will not attempt to do under the guise of a "liberal construction". Accordingly, we are compelled to conclude that the present case does not meet the requirements of Section 3801(b) (5).

■ Since we have held that the determination with respect to farm assets is not within any of the circumstances of adjustment, it is unnecessary to pass on the government's contention that the Commissioner's inconsistent position must be one of active consistency,[10] although we note that while there may have been some indication that such a requirement was contemplated by the Senate Finance Committee, the government's argument here was squarely rejected by the Tax Court in Albert Priest Trust, 1946, 6 T.C. 221. We approve of the rule enunciated in that case that the position adopted by the Commissioner need only be inconsistent with the erroneous treatment of the original transaction by the taxpayer.

For the reasons above stated, we conclude that as to the farm assets, taxpayer W. A. Rushlight cannot invoke Section 3801 in order to claim refunds barred by the statute of limitations.

The principles we have developed in regard to the problem of the farm assets are equally applicable to the steel works assets, although factual differences between the two call for a different treatment.

■ We are satisfied that the two 1953 determinations disposing of the refund claims of W. A. Rushlight and Raymond Rushlight meet the requirements of Section 3801(a) which includes within the definition of "determination":

"(C) a final disposition by the Commissioner of a claim for refund.
\* \* \*"

The government concedes that the basis of the steel works was determined in the refund claim determination in the amount of $92,470.40, but contends that this was a determination of the basis of the property in the hands of the partnership, and not a determination of the basis of the partnership interest of the partners. We recognize that the partners' basis is separate from the partnership basis and may sometimes differ from such partnership basis, but nothing is shown to indicate that the partners' basis is any different from the partnership basis in this case. In other cases, involving the applicability of Sec-

10. The only place in which we find this term is in the Report of the Senate Finance Committee:

"(1) To preserve unimpaired the essential function of the statute of limitations, corrective adjustment should (a) never modify the application of the statute except when the party or parties in whose favor it applies shall have justified such modification by active inconsistency, and (b) under no circumstances affect the tax save with respect to the influence of the particular items involved in the adjustment." S.Rep. No. 1567, 75th Cong. 3d Sess. p. 48 (1939). However, as noted above, the conference committee modified some of the recommendations of the Senate Finance Committee. Among these modifications appear the following:

"(6) If the amount of the adjustment is considered as a deficiency, the adjustment is authorized only when the taxpayer with respect to whom the determination is made has successfully maintained a position inconsistent with the error, and if the amount of the adjustment is considered as an overpayment, the adjustment is authorized only when the Commissioner has successfully maintained the inconsistent position." Conference Comm.Rep. No. 2330, 75th Cong. 3d Sess. pp. 58, 59.

This statement of the conference committee appears to eliminate whatever requirement of active inconsistency may have been contemplated by the Senate Finance Committee, which apparently had in mind the most flagrant abuses of the statute of limitations. This is further borne out by the fact that no reference is made anywhere in Section 3801 to active inconsistency.

tion 3801 in partnership situations, decisions were reached without any reference to the argument here suggested by the government. See Harry Landau, 1953, 21 T.C. 414; Sherover v. United States, supra.

With regard to circumstances of adjustment, what we have said concerning the farm assets is applicable to the refund claims for depreciation deductions not taken on the steel works assets. Such depreciation deductions do not come within the requirements of Section 3801(b) (5) or Section 3801(b) (1) for the same reason that the depreciation deductions on the farm assets do not. Both are governed by the same rules, and both would permit adjustment under Section 1312(6) of the 1954 Code, as we have noted previously. Accordingly, refund claims based on failure to take such depreciation deductions cannot be allowed, under Section 3801.

However, the same is not true of amounts claimed as refunds due to elimination of capital gains. We note that the refunds claimed by both taxpayers for the year 1947 are based on an erroneous recognition of a capital gain. The district court found that in 1947 Raymond Rushlight reported a capital gain in the sum of $500.78 on account of the sale of equipment without basis. In the same year W. A. Rushlight reported as a capital gain the sum of $572.32 on account of the sale of steel mill equipment without basis. These circumstances permit adjustment under Section 3801 (b) (5). An erroneous recognition of gain resulted due to the position of the Commissioner at the time of the disposition of the property, which position was inconsistent with the determination of basis with respect to the time of acquisition. This situation is squarely within Section 3801(b) (5), as indicated by our discussion of the farm assets.

Accordingly, we hold that Section 3801 applies to permit an adjustment on the 1947 tax returns solely as to said erroneous recognition of gain. As in the case of the farm assets, we believe that the result, while incongruous and in-

equitable, is required by a sound construction of the statute as it was originally written.

In 1950 Raymond Rushligh claimed a refund based in part on an erroneous treatment of a loss on salvage as to certain steel works assets. However, before considering whether Section 3801 applies to this, we consider the government's contention that relief under Section 3801 is not available to Raymond Rushlight on this claim because at the time of the determination, the statute of limitations had not run on the refund claim.

The refund claim as to the salvage loss arises out of the same determination of basis as do all other refund claims with respect to Raymond Rushlight in this case. We held above that the determination of November 18, 1953 was a determination of basis as to the steel works assets. This determination was made on a refund claim filed by Raymond Rushlight for the year 1943, pursuant to the net operating loss carryback provisions of Section 122(b) of the 1939 Code. The district court found that in this determination, the Commissioner redetermined Raymond Rushlight's tax liability for 1942, 1943, 1944 and 1945. This determination is the relevant determination for purposes of the applicability of Section 3801 with respect to refund claims by Raymond Rushlight.

It is conceded by appellees that at the time of the 1953 determination, the statute of limitations had not run on the 1950 refund claim. Accordingly, Raymond Rushlight cannot invoke Section 3801 to adjust his tax in 1950. Section 3801 is a remedial statute designed to alleviate abuses and hardships under the statute of limitations. It cannot be invoked by a taxpayer who has slept on his rights and allowed the statute of limitations to run when he could have filed a refund claim within the statute of limitations.

Appellee contends that he may apply the determination of the 1946 re-

fund claim, upon which a final disposition was made by the Commissioner in March 1954, after the running of the statute of limitations. This determination is not the relevant determination. The Commissioner in his determination relied on the prior 1953 determination, which was a determination of basis, in allowing the refund based on an erroneous failure to claim depreciation and an erroneous recognition of capital gain in 1946. This latter determination added nothing to the 1953 determination of basis, upon which the applicability of Section 3801 depends, and thus the determination of the Commissioner on the refund claim for 1946 is entirely irrelevant to the question of the applicability of Section 3801.

For the reasons above stated, we need not consider whether the refund claims of Raymond Rushlight for the year 1950 meets the requirements of Section 3801.

The judgment is vacated and the cause remanded to the district court for further proceedings not inconsistent with the views herein expressed.