**The GREAT FALLS NATIONAL BANK,**
a national banking corporation, et al.,
Plaintiffs,

v.

**UNITED STATES of America,**
Defendant.

**Civ. No. 3178.**

United States District Court,
D. Montana,
Great Falls Division.

Jan. 29, 1975.

Richard F. Gallagher, Church, Harris, Johnson & Williams, Great Falls Mont., for plaintiffs.

James N. Flaherty, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

RUSSELL E. SMITH, Chief Judge.

This tax refund case was submitted on an agreed statement of facts.

Taxpayers, Glenn A. Woodbury and Leo A. Woodbury,[1] were partners. In the years 1958, 1959, and 1960, income shown on the partnership return was allocated equally between them. In the year 1960 they traded a ranch in Nevada for a ranch in Montana, and for income tax purposes treated as nontaxable an exchange of some cows and yearlings received in the trade. As a result of a 1965 audit the Commissioner assessed deficiencies which resulted from a reallocation of the partnership on a basis 97+ percent to Glenn A. Woodbury and 2+ percent to Leo A. Woodbury, and

---

1. There are marital and estate relationships, but for the purposes of this case it is sufficient to use the names "Glenn A. Woodbury" and "Leo A. Woodbury."

treated the receipt of 225 cows and 425 mixed yearlings as ordinary income. The matter finally reached the Tax Court which in 1969 reduced the deficiency assessed by the Commissioner. The Tax Court allocated the partnership income on a basis of 67+ percent to Glenn A. Woodbury and 32+ percent to Leo A. Woodbury, and determined that 225 cows and 103 mixed yearlings were acquired tax-free but that 322 of the mixed yearlings were acquired on a sale and purchase basis. In all of the years following 1960 taxpayers paid income taxes on the basis of fifty/fifty allocation of partnership income and by treating the 322 yearlings as though they had been acquired tax-free. This resulted in an overpayment of income tax in that had the taxes in the years between 1958 and 1967 been calculated on the basis of the Tax Court determinations there would have been loss carrybacks in 1958, 1959, and 1960, and a lesser gain would have been taken on some cattle sales in subsequent years.

The Tax Court opinion was entered on December 12, 1967. Between December 12, 1967, and January 14, 1969, the parties made and argued Rule 50 computations, and on January 14, 1969, the Tax Court entered a decision which embodied its refusal to allow the carryback of net operating losses for the years 1958, 1959, and 1960, which taxpayer had included in its Rule 50 computations. Taxpayers filed a motion to reconsider which was denied on February 10, 1969, and on February 13, 1969. On February 13, 1969, the Commissioner assessed the deficiencies from 1958, 1959, and 1960 arising out of the Tax Court determinations. On March 9, 1969, a group of refund claims was filed for the years 1958–1962, 1964, 1966, and 1967. (All taxpayers did not file claims in all of these years.) In effect these claims sought to credit the overpayments in the years claimed to reduce the deficiencies assessed for the years 1958, 1959, and 1960. The deficiencies so calculated were paid on July 9, 1969. These

claims, supported by the same kinds of arguments as are here made as to 26 U.S.C. § 1311 mitigation, were presented to various levels of the Internal Revenue Service without avail except as to the year 1967. The taxpayers were ultimately required to, and did, pay the balance due on the full deficiency, with interest. Taxpayers on April 16, 1973, filed claims for refund for the years 1958–1964 and 1966. These claims were substantially the same as those previously filed except that, the deficiencies having been paid, taxpayers sought a cash refund.

There seems to be no dispute but that plaintiffs did, in view of the determinations of the Tax Court, pay more total taxes than they were obligated to pay over the whole period 1958 to 1966.

The problem is whether their remedy is barred or limited by rules of law or whether the mitigation provisions of 26 U.S.C. § 1311 et seq. are available to thwart those bars and limitations.

■ It is my opinion that the taxpayers here, if within the scope of 26 U.S.C. § 1311 et seq., are protected from the rules of res judicata which would normally flow from the Tax Court decision and from the operation of the bars and limitations established by 26 U.S.C. §§ 6512(a), 6511, 6511(d)(2), and 6514. I think this follows from the language of § 1311(a), which affords protection against "any law or rule of law."

■ There was here a "determination" within § 1311(a) since there was a decision by the Tax Court (§ 1313(a)(1)). The double inclusion of the partnership income by reason of Leo C. Woodbury's paying a tax on some 17 percent of the partnership income ultimately allocated to Glenn A. Woodbury was a circumstance described in § 1312(1). The change in the base of 322 mixed yearlings as a result of the determination was a circumstance described in § 1312(7).

The Secretary maintained that 97+ percent of the partnership income

should be allocated to Glenn A. Woodbury. The Tax Court determined that 67+ percent should be allocated to Glenn A. Woodbury. To the extent that the percentages so allocated to Glenn A. Woodbury were increased by about 17 percent over the 50 percent established by the taxpayers, the determination affirmed the position taken by the Secretary. 26 U.S.C. § 1311(b)(1)(A).

The Secretary maintained that the receipt of 225 cows and 425 mixed yearlings should be treated as ordinary income. To the extent that the Tax Court determined that the receipt of 322 mixed yearlings should be treated as ordinary income the determination affirmed the position taken by the Secretary. 26 U.S. C. § 1311(b)(1)(A).

■ Both of these positions were inconsistent with the erroneous inclusions[2] in the income of Leo A. Woodbury of the full 50 percent of the partnership income and with the inclusion of the full sale price of the 322 mixed yearlings in the partnership income. 26 U.S.C. § 1311(b)(1).

■ The Government's argument, to the effect that the title now appearing before § 1312(7) and reading "Basis of property after erroneous treatment of a prior transaction" means that only years before the Tax Court can be considered, is noted and is rejected. Whenever there is gain or loss there must be some prior transaction which establishes a base. It is to errors in the establishment of the base that the title refers and not to the time when the base became important as affecting the gain or loss. The transaction in the exchange of the ranches and cattle was erroneously treated as affecting the base of the 322 mixed yearlings. I think all that Congress was trying to say was that, where a determination changes a base, the treatment of the taxpayer and the Government in all matters affected by the base should be consistent.

■ The further argument is made that the one-year period for filing claims had expired under 26 U.S.C. § 1314(b). The findings and conclusions of the Tax Court were filed December 12, 1967. There followed a period during which Rule 50 computations were made and argued. The Tax Court assessed the deficiencies on January 14, 1969. Claims for refund were filed March 5, 1969. Section 1314(b) provides in part " . . . as if on the date of determination one year remained before the expiration of the periods of limitation upon . . . filing claim for refund. . . . " Whether the determination occurred on January 14, 1969, the date of the final decision of the Tax Court, or on April 14, 1969, when the time for appeal expired, the claims were filed well within the time period.

The parties shall make the adjustments necessary to reflect for all of the years in question a consistent treatment of partnership allocations of income (except as the allocation of partnership income should be charged by reason of changes in the capital structure of the partnership since 1960) and a consistent treatment of the base of 322 head of mixed yearlings in accordance with 26 U.S.C. § 1314(a). Such computations shall be submitted within sixty (60) days from the date of this order.

2. *See* United States v. Rushlight, 291 F.2d 508 (9th Cir. 1961).