Lucy COCCHIARA, wife of and Louis J. Roussel, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 85–3005.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1986.

Peter J. Butler, Gayle S. Reynolds, New Orleans, La., for plaintiffs-appellants.

Jack D. Warren, Tax Div., Dept. of Justice, Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., Gary R. Allen, David English Carmack, Attys., Washington, D.C., for defendant-appellee.

Before GARZA, POLITZ, and HILL, Circuit Judges.

GARZA, Circuit Judge:

## NATURE OF THE CASE

Plaintiffs, Louis J. Roussel and his wife, Lucy Cocchiara, (hereinafter referred to as "taxpayer") brought this mitigation action seeking to recover a refund for an overpayment of income taxes for the years 1960–1966. No one disputes that taxpayer made an overpayment for these years. Because of the operation of certain limitations statutes, however, only $228.535 was awarded. *See Republic Petroleum Corp. v. United States*, 613 F.2d 518 (5th Cir. 1980) (holding that taxpayer was precluded by the statute of limitations from recovering the balance of the overpayment). *Republic Petroleum* specifically left open the question of whether taxpayer could obtain relief from its judgment by relying on the mitigation provisions of the Internal Revenue Code (I.R.C. §§ 1311–1313). *Id.* at 527. In this separate mitigation action brought by taxpayer, the district court concluded that the mitigation provisions were not applicable and that taxpayer was not entitled to the full amount of the overpayments. We are called upon to decide whether the district court erred in refusing to apply the mitigation provisions of the Internal Revenue Code, thereby denying taxpayer recovery of the full amount of an overpayment that had undeniably been made. We hold that the mitigation statutes do apply and reverse the district court judgment.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual sequence underlying this litigation is important to a clear understanding of the legal principles at issue. In 1959, taxpayer sold two mineral leases to Republic Petroleum Corporation for roughly $2,000,000. Relying on the installment sale provisions of the Internal Revenue Code, taxpayer reported the gain on an installment sale basis over the tax years 1959–1965.[1]

After the IRS decided to investigate taxpayer's finances the parties entered into an agreement (hereinafter "§ 6501(c)(4) agreement") to extend until June 30, 1972 the statute of limitations on assessments for tax years 1959–1966.[2] On February 28, 1972, the IRS assessed deficiencies for each of those years, except 1960 and 1962, and issued "Quick Assessment" notices for 1959, 1961, and 1963–1966. For the years 1960 and 1962, the overpayment exceeded the deficiencies and taxpayer was credited on March 6, 1972, with a net overpayment for those years. The additional taxes assessed by IRS for the remaining years were paid by taxpayer on March 13, 1972, in one lump sum.

Over one year later, around August 15, 1973, taxpayer filed a suit for refund once again[3] for each of the years in issue. *Re-*

---

1. *See generally Republic Petroleum,* 613 F.2d 518 for details on the figures involved.

2. I.R.C. § 6501(c)(4) provides:
   (4) **Extension by agreement.** Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title ... both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

3. Taxpayer had originally filed a lawsuit on May 16, 1972, which was within the limitations period prescribed in § 6511(c)(1) regarding special rules applicable in cases of an extension of the normal limitations period by a § 6501(c)(4) agreement. This lawsuit was voluntarily dismissed by taxpayer after it was opposed by the IRS. The Court of Appeals in *Republic Petroleum* noted that taxpayer's refund claim was not

*public Petroleum Corp. v. United States,* 397 F.Supp. 900 (E.D.La.1975).

The district court upheld the IRS's position that taxpayer was not entitled to use the installment sale method to report the gain on the sale of the mineral leases. *Id.* at 907–11. But after examining the other adjustments made by the IRS for the years 1960–1966, the court vacated the additional adjustments and concluded that the IRS had received $511,878.03 more from taxpayer than it should have. The court, however, held that taxpayer was entitled to judgment for only $242,753.15 because of the bar of the statute of limitations.[4]

On appeal, the Court of Appeals affirmed the district court's judgment, except to the extent that the district court permitted taxpayer to recover a refund for tax years 1960 and 1962. *Republic Petroleum,* 613 F.2d at 525. As previously noted, the adjustments for the years 1960 and 1962 resulted in overpayments of taxes on certain items for each of those years. The district court reasoned that these overpayments were "paid" in 1972, when the IRS applied these overpayments to additional deficiencies assessed for each of those years. The additional deficiencies were disallowed by the district court. Consequently, recovery of the net overpayments was not barred by the statute of limitations under § 6511(a) and (b)(2)(B). The Court of Appeals, how-

ever, rejected the district court's reasoning on this issue and held that the limitations period barred the refund of tax money paid with the filing of the yearly returns. *See Republic Petroleum,* 613 F.2d at 524–25. Accordingly, the Court of Appeals reduced the award from $242,753.12 to $228,535.27.[5]

## II. THE MITIGATION ACTION

After the judgment in *Republic Petroleum* became final, taxpayer filed this mitigation action on April 2, 1981, from which this appeal followed. The district court referred the case to a special master who met with counsel for the IRS and taxpayer and rendered a report on the applicability of the mitigation statutes. The special master found, as a matter of fact, that taxpayer had indeed paid a double tax on the same item of income (sale of mineral leases in 1959) for which taxpayer had never received a refund or credit against taxes legitimately owed. He also found that all other requirements under the mitigation statutes had been satisfied and that taxpayer was entitled to recove this double tax, determined to be $254,695. The special master reiterated these findings in a supplemental report requested by the district court.

Contrary to the master's report, however, the district court issued findings of fact and conclusions of law in which it

filed within the six month period after the expiration date of the § 6501(c)(4) agreement, as required by § 6511(c)(1), but it held that "the provisions of section 6511(c) do not affect the outcome here." 613 F.2d at 524 n. 15. In Part II.B.3., *infra,* of this opinion, we treat the IRS's argument that by allowing the § 6511(c)(1) limitations period to run, taxpayer lost the right to recover overpayments made with the filing of the yearly tax returns.

**4.** The district court in *Republic Petroleum, supra,* recognized that under § 6511(b)(2)(B) taxpayer could only recover taxes credited or paid in cash on March 6 and 13, 1972, respectively. 397 F.Supp. at 906–07. Section 6511(b)(2)(B) provides in pertinent part:

> **(B) Limit where claim not filed within 3-year period.** If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years

immediately preceding the filing of the claim.

The court also noted that taxpayer's remedy for double payment of taxes was through an action under the mitigation statutes. 397 F.Supp. at 907.

**5.** Taxpayer also urged to the Court of Appeals that the mitigation provisions were applicable. The Court ruled, however, that the mitigation provisions did not become available to taxpayer until "a decision by the tax court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final" had been rendered. I.R.C. § 1313(a)(1). The Court noted that taxpayer had to bring a separate mitigation action at the conclusion of the appeal if taxpayer wanted to mitigate the judgment. But the court expressed no view on whether taxpayer ought to prevail in a future mitigation action, thus leaving this issue open. *Republic Petroleum,* 613 F.2d at 527 & n. 21.

found that taxpayer had not paid a double tax on the same item of income and that the mitigation provisions did not apply. The court found that the special master made "some erroneous factual statements" due to "incorrect legal assumptions" regarding the mitigation provisions. The special master had reasoned that because substantially all of the additional assessments levied by the IRS with respect to items of income other than the mineral lease proceeds were struck down by the court in *Republic Petroleum,* taxpayer was, in effect, taxed twice on the mineral lease sale. The district court, however, ruled that taxpayer was taxed once on the mineral lease sale and once on other items of income, albeit erroneously. Therefore, the court held, the final determination in *Republic Petroleum* did not require the double inclusion of taxpayer's gross income in two different tax years.

## A. *The Mitigation Statutes*

■ The mitigation statutes were enacted to ameliorate the harsh effect of the statute of limitations in situations where because of the maintenance by a party of a position in one tax year that is inconsistent with the treatment of the same item in a barred year, a taxpayer is either subjected to a double tax or benefitted by a double deduction. In regard to this case, the mitigation provisions specify three requirements that taxpayer must meet to prevail:

(1) There must be a "determination" (as defined in I.R.C. § 1313); [6]

(2) On the date of such determination, correction of the error sought to be mitigated must be prevented by the operation of any law or rule of law other than this part or I.R.C. § 7122 (relating to compromises); [7]

(3) The position maintained by the IRS must be inconsistent with the position maintained by the taxpayer and the determination adopts the position maintained by the IRS.[8]

(4) And the determination requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year.[9]

The parties do not dispute that the first two factors listed above have been met. The judgment and opinion of the Court of Appeals in *Republic Petroleum, supra,* constitutes the final judgment or decree that is necessary before the mitigation statutes may be invoked. And on the date the judgment became final, correction of the alleged overpayments was barred by the statute of limitations. I.R.C. § 1311(a).

---

**6.** I.R.C. § 1313(a)(1) provides in pertinent part:

   (a) **Determination.** For purposes of this part the term "determination" means—
   (1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final.

**7.** I.R.C. 1311(a) provides:

   (a) **General Rule.** If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

**8.** I.R.C. § 1311(b)(1)(A) provides in pertinent part:

   An adjustment shall be made under this part only if—
   (A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under section 1314, there is adopted in the determination a position maintained by the Secretary.

   .    .    .    .    .

   and the position maintained by the Secretary ... is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition as the case may be.

**9.** I.R.C. § 1312(1) provides in pertinent part:

   The circumstances under which an adjustment provided in section 1311 is authorized are as follows:
   (1) **Double inclusion of an item of gross income.** The determination requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year....

The central dispute here is whether the parties have maintained an inconsistent position within the meaning of § 1311(b) and whether the operative effect of the determination constitutes a double inclusion of income under § 1312(1). This Circuit has held that when applying the mitigation statutes the facts of each case must fit "into the concrete, detailed requirements set out in the statute." *United States v. Rachal,* 312 F.2d 376, 383 (5th Cir.1962). Moreover, taxpayer has the burden of proving that the mitigation statutes apply. *United States v. Rushlight,* 291 F.2d 508, 514 (9th Cir.1961).

### B. *Analysis and Discussion*

■ In the case at bar, taxpayer had to establish that he had maintained an inconsistent position from that adopted in the final determination and that there was an erroneous double inclusion of an item of gross income. From the perspective of the IRS's arguments these two elements are not mutually exclusive and it is sometimes difficult to separate them analytically.

The IRS contends that there is no "inconsistent treatment" nor a "double inclusion" of income here. First, there is no inconsistent treatment because the taxes paid with the yearly returns 1960–1965 (based on installment sale treatment of the mineral leases) lost their character as installment sale taxes when they were credited to the additional, unrelated (albeit erroneous) assessments made by the IRS. Therefore, the admittedly overpaid taxes are unrelated to the IRS's treatment of the sale of the mineral leases and taxpayer cannot say that he has been taxed twice on the same item of income.

Second, the IRS further contends that there has been no double inclusion of an item of gross income by virtue of the final determination. The item of gross income, that is, proceeds from the mineral lease sale, was taxed only once—in 1959. Granted, taxpayer had originally erroneously included these proceeds as gross income through the years 1960–1965 in an attempt to get installment sale treatment of these

proceeds, but the IRS and the court disallowed that treatment and taxed the mineral lease sale in its entirety in 1959. The tax payments taxpayer had made on the installment sale treatment remained in the possession of the IRS. They were used, however, to set off additional tax liabilities incurred because of unrelated (albeit erroneous) assessments made by the IRS. The IRS fastens on the literal wording of § 1312(1), that there must be a double inclusion of an item of *gross income* which was erroneously included in the *gross income* of the taxpayer for another taxable year, to press the dubious distinction between a double inclusion of gross income and a double inclusion of taxes paid on gross income.

In the interest of fairness and justice, we must reject such sophistry. We understand the arguments of the IRS. It is true that the mitigation statutes are not meant to relieve taxpayers (or the IRS) of the disabilities imposed by limitations statutes in all circumstances. But we find that this case falls within that class of cases covered by the mitigation statutes, and we will not engage in a hypertechnical reading of the statutory language to defeat their purpose.

### 1. *Maintenance of an Inconsistent Position*

To the argument that there has been no maintenance of an inconsistent position, we can fairly reply that if the taxes paid with the installment sale treatment of the mineral lease proceeds magically lost their character as such when they were credited to satisfy tax liabilities on other unrelated assessments, then these taxes regained their character as installment sale taxes when the district court and the Court of Appeals ruled that the additional unrelated adjustments were erroneously assessed. Failure to follow this metaphysical reasoning to its logical end gives the IRS the inequitable advantage of benefitting from erroneous tax assessments. We reject the argument that the admittedly overpaid taxes became "unrelated" or "irrelevant" to the treatment of the mineral lease sale

when the additional unrelated assessments were made, and we find that the "maintenance of an inconsistent position", necessary for an adjustment under § 1311(b)(1)(A),[10] was met.

### 2. *Double Inclusion of Gross Income*

We must also reject the IRS's argument that there has been no double inclusion of an item of gross income under § 1312(1). We agree that the determination does not require taxpayer to include the income from the mineral lease sale in both 1959 and through the years 1960–1965. But it is the taxes due on the items of gross income, not the double inclusion of the gross income itself, that the statute by implication refers to. Again, the IRS would have us suppose that taxpayer's income from the mineral lease sale, which was reported throughout the years 1960–1965 (a treatment which is itself fictitious, but allowable, under the proper circumstances) was magically transferred to taxpayer's 1959 return (resulting in a tax deficiency for 1959) and that the taxes paid on the installment sale treatment of the mineral lease sale became "unrelated" taxes paid on other assessments. We find, under these facts, that the final determination requires the double inclusion of an item of gross income in the sense that double taxes on the same item of gross income were paid to the IRS and remain in their possession.

### 3. *Taxpayer's Failure to File Suit Before the § 6501(c)(4) Agreement Limitations Period Lapsed*

The IRS argues further that the mitigation provisions were not meant to relieve taxpayers who allow the limitations period to run from the hardship caused by this disability. It is true that pursuant to the § 6501(c)(4) agreement between the parties, taxpayer had about ten months in which to file a suit for refund of taxes pursuant to § 6511(c).[11] In fact, taxpayer filed a timely lawsuit—timely in regard to the limitations provisions for § 6501(c)(4) agreements—but later voluntarily dismissed it.[12] The next lawsuit filed, that of *Republic Petroleum, supra,* was timely in regard to the limitations provisions for the deficiency assessments paid or credited in 1972, but was not timely for purposes of the § 6501(c)(4) agreement. We must decide whether taxpayer's failure to file a timely lawsuit in regard to the taxes paid with the yearly returns precludes him from invoking the mitigations statutes. We hold that it does not.

Both before the district court and at oral argument the IRS unequivocally contended that taxpayer could have laid claim to the overpaid taxes sent in with his yearly returns for the years 1960–1965 if he had maintained, and prevailed in, the lawsuit filed on May 16, 1972. This lawsuit had

---

**10.** *See supra,* note 8.

**11.** Section 6511(c)(1) provides:

(c) **Special rules applicable in case of extension of time by agreement.** If an agreement under the provisions of section 6501(c)(4) extending the period of assessment of a tax imposed by this title is made within the period prescribed in subsection (a) for the filing of a claim for credit or refund—

(1) **Time for filing claim.** The period for filing claim for credit or refund or for making credit or refund if no claim is filed, provided in subsections (a) and (b)(1), shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof under section 6501(c)(4).

The parties had agreed to extend the limitations period pursuant to § 6501(c)(4) until June 30,

1972. Thus, taxpayer had until December 31, 1972, to file a refund claim under this provision.

**12.** When pressed at oral argument about why the very first, timely lawsuit was dismissed, counsel for taxpayer responded that they were "caught in the switches". On one hand, taxpayer was still contending that he was entitled to installment sale treatment of the mineral lease sale proceeds. On the other hand, taxpayer would have had to argue that he was entitled to a refund of taxes paid on the installment sale treatment of the mineral lease proceeds, thereby conceding by implication that the installment sale treatment was improper. Counsel for the IRS countered that taxpayer could have pleaded his inconsistent arguments in the alternative. In view of our rulings, *infra,* we see no need to penalize taxpayer for having missed an opportunity to end this litigation much earlier.

**1114**

been filed well before the limitations period under § 6511(c)(1) had lapsed. But we fail to see how this hurts taxpayer's case since under § 6511(c)(2) [13] taxpayer was barred from reaching the moneys paid with the returns anyway.

■ Even assuming, *arguendo*, that taxpayer was not barred by § 6511(c)(2) from recovering moneys paid with the yearly returns, we find that the mitigation provisions operate independently of § 6501(c)(4) agreements and the § 6511(c) limitations periods applicable to such agreements. As the pertinent provision of the mitigation statutes provides.

> [O]n the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law ... then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

I.R.C. § 1311(a). No one disputes that on the date of the final determination, the operation of certain limitations provisions precluded taxpayer from correcting taxes erroneously paid with the tax returns for the years 1960–1965. Accordingly, we find

that taxpayer had not "slept on his rights" by allowing the § 6501(c)(4) agreement limitations period to pass, and we hold that the mitigation statutes are applicable to this case.

### CONCLUSION

Throughout the litigation of this case, taxpayer consistently contended that he was entitled to installment sale treatment of the mineral lease sale proceeds. Both the district court and the Court of Appeals in *Republic Petroleum* recognized that taxpayer's remedy for the double inclusion of taxes, if any, had to be raised in a separate action pursuant to the mitigation statutes. These statutes are essentially equitable in nature. They relieve the parties from the disabilities imposed by the pertinent statute of limitations under the Internal Revenue Code. No one disputes that this mitigation action was timely filed. Although the mitigation statutes do not apply to all cases where the right or the remedy is barred by a limitations statute, it would be inequitable for us to hold that they do not apply to this case.

Section 1314 of the I.R.C. dictates the amounts and method of adjustment under the mitigation provision.[14] The IRS con-

---

13. I.R.C. § 6511(c)(2) provides:
   **(2) Limit on amount.** If a claim is filed, or a credit or refund is allowed when no claim was filed, after the execution of the agreement and within 6 months after the expiration of the period to the agreement or any extension thereof, *the amount of the credit or refund shall not exceed the portion of the tax paid after the execution of the agreement and before the filing of the claim or the making of the credit or refund, as the case may be, plus the portion of the tax paid with the period which would be applicable under [§ 6511(b)(2)] if a claim had been filed on the date the agreement was executed* (emphasis added).
   See § 6511(b)(2), *supra*, note 4.

14. (a) **Ascertainment of amount of adjustment.** In computing the amount of an adjustment under this part there shall first be ascertained the tax previously determined for the taxable year with respect to which the error was made. The amount of the tax previously determined shall be the excess of—
   (1) the sum of—
      (A) the amount shown as the tax by the taxpayer on his return (determined as pro-

vided in section 6211(b)(1), (3), and (4), relating to the definition of deficiency), if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
      (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
   (2) the amount of rebates, as defined in section 6211(b)(2), made.
There shall then be ascertained the increase or decrease in tax previously determined which results solely from the correct treatment of the item which was the subject of the error (with due regard given to the effect of the item in the computation of gross income, taxable income, and other matters under this subtitle). A similar computation shall be made for any other taxable year affected, or treated as affected, by a net operating loss deduction (as defined in section 172) or by a capital loss carryback or carryover (as defined in section 1212), determined with reference to the taxable year with respect to which the error was made. The amount so ascertained (together with any amounts wrongfully collected as additions to the tax or interest, as a result of such error) for each taxable year

cedes that there is no dispute on the numbers, only on the legal question of whether the mitigation statutes apply. Since our holding today involves solely a matter of legal interpretation, we reverse the district court and render judgment for taxpayer for the amount of overpaid taxes attributable to the installment sale treatment of the mineral lease proceeds and barred from recovery by the operation of the limitations statutes.

REVERSED AND RENDERED.

shall be the amount of the adjustment for that taxable year.