FRUIT OF THE LOOM, INC., TRANSFEREE OF THE ASSETS OF, AND PRIMARILY LIABLE AS SUCCESSOR BY MERGER TO, NORTHWEST INDUSTRIES, INC., TRANSFEREE OF THE ASSETS OF, AND PRIMARILY LIABLE AS SUCCESSOR BY MERGER TO, PHILADELPHIA & READING CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fruit of the Loom v. Commissioner
Docket No. 26234-92
United States Tax Court
T.C. Memo 1994-492; 1994 Tax Ct. Memo LEXIS 494; 68 T.C.M. (CCH) 867; October 6, 1994, Filed *494 Decision will be entered for petitioner. Following R's audit of P's 1964-68 taxable years, R and P agreed that P was not entitled to the $ 19 million reduction in sale price reported for 1966, but that P could claim $ 15.2 million of this reduction as a loss for 1967. The agreement was reflected on a Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, that listed deficiencies for 1965, 1966, and 1968 aggregating $ 10,529,835, and overassessments for 1964 and 1967 aggregating $ 6,469,651. The Form 870 stated that R could not assess the deficiencies until R scheduled the overassessments. R assessed the deficiencies before scheduling the overassessments. The period of limitations under sec. 6501, I.R.C., for assessing the deficiencies expired shortly after they were assessed. After R collected the net deficiency of $ 4,060,184 ($ 10,529,835 in deficiencies less $ 6,469,651 in overassessments), P sued R for a refund of the gross deficiency of $ 10,529,835. The Court of Appeals for the Third Circuit held that the assessment was illegal and invalid, and that R must refund the gross deficiency to P. R seeks in this Court *495 to use the mitigation provisions of secs. 1311- 1314, I.R.C., to assess a deficiency in P's 1966 Federal income tax on account of P's reporting of the $ 19 million reduction for that year. Held: The mitigation provisions do not allow R to assess a deficiency in P's 1966 Federal income tax. For petitioner: [1]Thomas Kittle-Kamp, Thomas C. Durham, and Frederic L. Hahn. For respondent: James S. Stanis. LARO
LARO
MEMORANDUM OPINION LARO, Judge: The parties submitted this case to the Court fully stipulated under Rule 122(a). [2] Fruit of the Loom, Inc., petitioned the Court on November 24, 1992, to redetermine respondent's alternative determinations of a $ 7,135,865 deficiency in the 1966 Federal income tax of a predecessor corporation or a $ 7,296,000 deficiency in the 1967 Federal income tax of that predecessor corporation. Respondent determined that petitioner was primarily liable for the deficiencies as successor by merger to its predecessor, Northwest Industries, *496 Inc. (Northwest), which in turn was primarily liable as successor by merger to its predecessor, Philadelphia & Reading Corp. (Philadelphia). Respondent reflected this determination in a notice of deficiency issued to petitioner on September 2, 1992. Respondent also determined that petitioner was liable for the deficiencies as transferee of the property of Northwest and Philadelphia, and reflected this determination in a second notice of deficiency issued to petitioner on September 2, 1992. Respondent further determined that Philadelphia and its subsidiaries (collectively referred to as Parent) were liable for the deficiencies and reflected this determination in a notice of deficiency issued to Parent on September 2, 1992. Following respondent's withdrawal of her alternative determination concerning Parent's 1967 Federal income *497 tax liability, the sole issue for decision is whether the mitigation provisions in sections 1311-1314 permit an assessment of a deficiency in Parent's 1966 Federal income tax; such an assessment is otherwise barred by the period of limitations under section 6501. We hold that the mitigation provisions do not allow such an assessment. Background
The stipulated facts and accompanying exhibits are incorporated herein by this reference. When the petition was filed, petitioner was a Delaware corporation with its principal place of business in Chicago, Illinois. The Federal income tax returns that are relevant herein were consolidated returns filed timely by Parent for its taxable years ended December 31, 1964, 1965, 1966, 1967, and for its short taxable period ended April 18, 1968 (hereinafter, Parent's short taxable period ended April 18, 1968, is referred to as the 1968 taxable year). In the fall of 1972, respondent completed an audit of Parent's 1964-68 taxable years. A principal issue in the audit involved a $ 19 million reduction in sale price (the $ 19 million reduction) that was claimed for 1966 by one of Philadelphia's subsidiaries, Extoy Corp. (Extoy). [3] Parent had *498 reported for 1966 an $ 11,995,836 loss on the sale (taking into account the $ 19 million reduction). Respondent and Parent resolved this issue as follows: The $ 19 million reduction was disallowed for 1966, and Parent was allowed to deduct $ 15.2 million of the $ 19 million reduction as a loss for 1967. [4] The disallowance/allowance produced a deficiency in Parent's 1966 Federal income tax and an overassessment in Parent's 1967 Federal income tax. Parent reflected the resolution of all issues raised during the course of the audit on Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and *499 Acceptance of Overassessment (Form 870). Form 870, which waived the assessment restrictions in section 6213(a), see sec. 6213(d), was signed by Parent on December 13, 1972. Form 870 listed the following deficiencies and overassessments of tax: Taxable Year Ended
Deficiency
Overassessment
Dec. 31, 1964
--  $ 231,991
Dec. 31, 1965
[1] $ 19,485
--  Dec. 31, 1966
9,336,231
--  Dec. 31, 1967
--  6,237,660
Apr. 18, 1968
1,174,119
--  $ 10,529,835
$ 6,469,651
Because Parent did not want respondent to assess the 1965, 1966, and 1968 deficiencies until the 1964 and 1967 overassessments were approved by the Joint Committee on Internal Revenue Taxation (Joint Committee), [5] Form 870 contained the following qualifying language: This document shall be effective as a waiver of restrictions on assessment and collection with respect to taxable years ending December 31, 1965 and December 31, 1966 and the taxable period ending *500 April 18, 1968, on the date the schedule of overassessments with respect to the taxable years ending December 31, 1964 and December 31, 1967 is signed by an authorized representative of the Internal Revenue Service.
In January 1973, respondent forwarded Parent's file and an agent-prepared report to her National Office for transmittal to the Joint Committee to approve the refund or credit of Parent's 1964 and 1967 overassessments. Respondent also transferred control documents from her Chicago District Office to her Kansas City Service Center (Kansas City) to process the case. Under Service Center procedures, deficiencies are automatically assessed, absent specific instructions to the contrary, when control cards listing deficiencies of over $ 50,000 are received. A Kansas City employee, Ida Ballard (Ballard), assessed Parent's 1965, *501 1966, and 1968 deficiencies in February 1973. Respondent had not yet issued Parent a notice of deficiency, and the Joint Committee was still reviewing the overassessments. Gerald Nordstrom (Nordstrom), Parent's internal tax counsel, received a bill for these deficiencies on February 14, 1973. Nordstrom contacted Ballard and informed her that the assessment was improper under the qualifying language on Form 870. Ballard abated the assessment, and a notice of abatement was mailed to Nordstrom shortly thereafter. The Joint Committee approved a refund or credit of Parent's 1964 and 1967 overassessments on June 19, 1973. [6] On or before June 22, 1973, respondent's Chicago District Office secured an extension to September 30, 1973, of the period of limitations with respect to Parent's 1965, 1966, and 1968 taxable years. On June 22, 1973, Ballard reassessed Parent's 1965, 1966, and 1968 deficiencies. Ballard believed that the period of *502 limitations would expire on June 30, 1973; she was unaware that the period of limitations had been extended to September 30, 1973. [7] Nordstrom again informed Ballard that the assessment of these deficiencies was premature under the qualifying language on Form 870. Nordstrom also informed Ballard that Parent had consented to extend the period of limitations for its 1965, 1966, and 1968 taxable years to September 30, 1973. Respondent did not abate the assessment. Respondent stayed any collection on the assessment until Parent's account was credited with the 1964 and 1967 overassessments. In August 1973, respondent scheduled the $ 6,237,660 overassessment for Parent's 1967 taxable year. In October 1973, respondent scheduled the $ 231,991 overassessment *503 for Parent's 1964 taxable year. The period of limitations for an assessment for Parent's 1965, 1966, and 1968 taxable years expired on September 30, 1973. Before this date, respondent neither issued a notice of deficiency nor made a post-June 22, 1973, assessment for Parent's 1965, 1966, and 1968 taxable years. Respondent initiated collection proceedings against Parent in November 1973 to collect the amounts assessed on June 22, 1973. Parent filed suit in the U.S. District Court for the Northern District of Illinois in December 1973 to enjoin respondent from collecting these amounts. Parent alleged that respondent neither issued a notice of deficiency nor complied with the conditions on the Form 870 waiver. The District Court held that respondent's assessment was illegal, and enjoined respondent from collecting any amount in excess of the net deficiency of $ 4,060,184 (i.e., the $ 10,529,835 in deficiencies less the $ 6,469,651 in overassessments). The court ruled that Parent failed to establish the requisite harm for injunctive relief to stay collection of the net deficiency. Philadelphia & Reading Corp. v. Beck, 47 AFTR 2d 81-740, 81-1 USTC 9180 (N.D. Ill. 1980). *504 Both parties appealed. The Court of Appeals for the Seventh Circuit affirmed. Philadelphia & Reading Corp. v. Beck, 676 F.2d 1159 (7th Cir. 1982). Respondent netted the $ 6,469,651 in overassessments for 1964 and 1967 (plus interest) against the $ 10,529,835 in deficiencies for 1965, 1966, and 1968 (plus interest) and collected the $ 4,060,184 net deficiency (plus interest) in 1983 by levying Parent's bank account in Chicago, Illinois. [8] Parent sued the Government in the U.S. District Court for the District of Delaware on November 22, 1983, for a refund of 1966 and 1968 deficiencies aggregating $ 4,887,322.67, plus penalties and interest. [9] Parent subsequently amended its complaint to request a refund of the gross deficiencies of $ 10,529,835 for its 1965, 1966, and 1968 taxable years (plus interest). *505 The District Court noted that the June 22, 1973, assessment was illegal and invalid, but denied relief to Parent stating, that Parent had previously obtained the benefits of the overassessments without suffering any material detriment. Philadelphia & Reading Corp. v. United States, 738 F. Supp. 143, 149 (D. Del. 1990). Parent appealed. The Court of Appeals for the Third Circuit reversed. The Court of Appeals held that the Government had to refund the $ 10,529,835 (plus interest) to Parent because the assessment was illegal and because equitable considerations cannot override the statutory scheme for assessing Federal income taxes. Philadelphia & Reading Corp. v. United States, 944 F.2d 1063, 1076 (3d Cir. 1991). The District Court, upon remand, ordered the Government to refund to Parent Federal income taxes, penalties, and interest totaling $ 59,897,232.68. This figure was determined as follows: 1963
Net deficiency assessed $ 4,060,184.00 Penalties assessed 1,008,767.79 Interest assessed 5,037,800.12 Other interest 14,947,458.12 Less: Prior refund (1,101,041.38) $ 23,953,168.65 1964
Overassessment $ 231,991.00 Interest 1,160,200.15 $ 1,392,191.15 1967
Adjustment $ 6,199,930.00 Interest 28,137,192.72 $ 34,337,122.72 1968
Carryback $ 37,730.00 Interest 168,096.26 $ 205,826.26 Other Interest
$ 8,923.90 $ 59,897,232.68 *506 The sole bases asserted by Parent for its right to this refund had been that: (1) The June 22, 1973, assessment was illegal and invalid, and (2) respondent did not legally and validly assess the 1965, 1966, or 1968 deficiencies within the period of limitations. Neither the parties nor the courts addressed the question of whether any deductions taken by Parent were proper. Parent had agreed upon the conclusion of the audit that respondent's adjustments with respect to its income (including the adjustment with respect to the $ 19 million reduction) were proper. Discussion
The facts of this case illustrate the need for respondent's offices to communicate internally to assess timely deficiencies to which the Government is entitled. In Han v. Commissioner, T.C. Memo. 1993-386, a case that came to this Court from the same district as the instant case, we awarded the taxpayers reasonable litigation and administrative costs following a poorly conducted audit that was "a textbook example of how respondent should not conduct an examination." Id. The present case presents a textbook example of how not to communicate. Respondent's lack of internal *507 communication resulted in an untimely assessment for Parent's 1965, 1966, and 1968 taxable years. The District Court for the District of Delaware ordered the Government to return all amounts collected on the illegal assessment. Respondent undertakes to recover through the mitigation provisions part of the amounts returned. We must decide whether these provisions bar assessment for Parent's 1966 taxable year. Taxes imposed by the Internal Revenue Code generally must be assessed within 3 years of the later of the due date of the return or the date on which the return was filed. [10]Sec. 6501(a) and (b)(1); Mecom v. Commissioner, 101 T.C. 374, 381 (1993). The Congress designed this period of limitations to provide finality in matters that could otherwise continue indefinitely. Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 300-301 (1946). The period of limitations is a fundamental and essential component of our tax administration that cannot lightly be tossed aside. Olin Mathieson Chem. Corp. v. United States, 265 F.2d 293, 296 (7th Cir. 1959). Sometimes, the application of *508 the period of limitations benefits the Commissioner. Other times, it benefits the taxpayer. Rothensies v. Electric Storage Battery Co., supra at 301. The mitigation provisions were designed to palliate the effect of the period of limitations in certain meticulously and narrowly drafted situations. Bradford v. Commissioner, 34 T.C. 1051, 1054 (1960). In those situations, the mitigation provisions preclude the Commissioner or a taxpayer from taking a position that is inconsistent with an earlier year's position and then seeking refuge behind the period of limitations that otherwise prevents an adjustment to the earlier year. S. Rept. 1567, 75th Cong., 3d Sess. (1938), *509 1939-1 C.B. (Part 2) 779, 815. The mitigation provisions, though intricate and complex, represent the Congress' attempt to reduce the difficulties encountered in attempting to determine correctly the year in which items of deductions and income should be reported. O'Brien v. United States, 766 F.2d 1038, 1041 (7th Cir. 1985); see also 2 Mertens, Law of Federal Income Taxation, sec. 14.02, at 2 (1993). The mitigation provisions, in the circumstances in which they apply, permit the correction of an item that is shown to be erroneous by a determination in an administrative or judicial proceeding relating to another year. Chertkof v. Commissioner, 649 F.2d 264, 267 (4th Cir. 1981), affg. 66 T.C. 496 (1976). We construe the mitigation provisions to preserve unimpaired the essential role of the period of limitations. See MacDonald v. Commissioner, 17 T.C. 934, 939-940 (1951); see also S. Rept. 1567, supra, 1939-1 C.B. (Part 2) at 815. The Court of Appeals for the Seventh Circuit, to which this case is appealable, *510 [11] see sec. 7482(b)(1)(B), has stated that the mitigation provisions are to be interpreted liberally and remedially in order to reach an equitable result. O'Brien v. United States, supra at 1042. But the Court of Appeals for the Seventh Circuit has also observed that the mitigation provisions were not intended "to provide relief for inequities in all situations in which just claims are precluded by statutes of limitations" and that periods of "limitations are an indispensable element of practical tax administration, and both hardships to taxpayers and losses of revenue may and do result from their application in the field of taxation." Olin Mathieson Chem. Corp. v. United States, supra at 296; see also United States v. Rushlight, 291 F.2d 508, 514 (9th Cir. 1961). *511 The mitigation provisions apply if: (1) An error occurred in a taxable year which cannot otherwise be corrected by operation of law, sec. 1311(a); (2) there was a determination for another year with respect to the item giving rise to the error, id.; see also sec. 1313(a) (definition of the term "determination"); (3) the determination was within one of the categories enumerated in section 1312 as a circumstance of adjustment (e.g., a double allowance of a deduction, see sec. 1312(2)), sec. 1311(a); and (4) the party who prevailed in the determination maintained a position that was adopted there and that was inconsistent with the erroneous treatment. Sec. 1311(b); Chertkof v. Commissioner, 66 T.C. at 499. If the mitigation provisions apply, the taxable income for the year of the error may be adjusted under section 1314. Sec. 1311(a). Because respondent is invoking the mitigation provisions as an exception to the normal period of limitations, she bears the burden of proving that each of the four requirements has been met. Bradford v. Commissioner, supra at 1054; see also Olin Mathieson Chem. Corp. v. United States, supra at 296. *512 Failing to prove that each of these requirements has been met prevents her use of the mitigation provisions. Rasmussen v. United States, 811 F.2d 949, 952 (5th Cir. 1987); O'Brien v. United States, supra at 1042; Bolten v. Commissioner, 95 T.C. 397, 403 (1990); Money v. Commissioner, 89 T.C. 46, 48-49 (1987); Bradford v. Commissioner, supra at 1054; see also United States v. Rushlight, supra at 514-515. The fact that the case was submitted fully stipulated does not change or otherwise lessen respondent's burden. Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. on other issues 943 F.2d 22 (8th Cir. 1991). Looking at the second requirement first, we find that respondent has not met her burden with respect thereto. The second requirement requires that respondent establish that there was a determination for another year with respect to the item giving rise to the error. Chertkof v. Commissioner, 66 T.C. at 499. *513 Respondent has not met this requirement. Accordingly, we do not pass on the other three requirements mentioned above, and we limit our discussion to our holding that the record does not establish the requisite determination. See Rasmussen v. United States, supra at 952. Respondent argues that an error occurred when Parent deducted, and the Court of Appeals for the Third Circuit allowed, the $ 19 million reduction for 1966. According to respondent, the $ 19 million reduction was deductible for 1967, rather than 1966, because her agents so determined. As respondent stated on brief: It is undisputed in this case that a major adjustment made in the audit was to disallow a $ 19,000,000.00 deduction from the sales price relating to the Extoy Sale. Respondent's agents determined in the audit that this deduction was not allowable for 1966, but that $ 15,200,000 of this deduction was allowable for 1967. This determination largely caused the 1966 deficiency and the 1967 overassessment. Therefore, for purposes of this case, the "error" is the claiming of the $ 19,000,000 deduction for 1966.
Respondent's arguments are based on her belief that *514 the "correct" year for reporting the $ 19 million reduction was 1967. Although this may be true, which we do not purport to decide, a determination under section 1313(a) was not made to this effect. Respondent's determination during or following her audit of Parent does not constitute a determination for purposes of the mitigation provisions. The mitigation provisions were drafted with great precision and care. Bolten v. Commissioner, supra at 403; B.C. Cook & Sons, Inc. v. Commissioner, 65 T.C. 422, 430 (1975), affd. 584 F.2d 53 (5th Cir. 1978). The term "determination", a term of art, was narrowly defined in section 1313(a) to mean: (1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final; (2) a closing agreement made under section 7121; (3) a final disposition by the Secretary of a claim for refund. * * * * * * (4) under regulations prescribed by the Secretary, an agreement for purposes of this part, signed by the Secretary and by any person, relating to the liability of such person * * * in respect *515 of a tax under this subtitle for any taxable period.
Following our careful review of the instant record, we conclude that a determination was not made recognizing that 1967 was the proper year for Parent to deduct a significant portion of the $ 19 million reduction. The record is devoid of a closing agreement or an agreement as used in section 1313(a)(4) and the regulations thereunder. See sec. 1.1313(a)-4, Income Tax Regs; see also sec. 1313(a)(2), (4). Although the record contains a claim for refund for 1967, see supra note 8 and the accompanying text, we need not decide whether respondent's handling of this claim rose to the level of a determination under section 1313(a)(3). Respondent did not issue her notice of deficiency until more than 8 years after she collected the net deficiency from Parent by levying upon its bank account in 1983, and nearly 18 years after she allowed a refund or credit in respect of the 1967 assessment.[12] Sec. 6407 (date of allowance of credit or refund is the date on which respondent schedules the overassessment); see also Rev. Rul. 62-160, 1962-2 C.B. 139. Thus, respondent is time barred on assessing *516 a deficiency with respect to this claim even assuming, arguendo, that her handling of this claim was a determination. See sec. 1314(b) (period of limitations for the assessment of a deficiency under the mitigation provisions is treated as remaining open for 1 year after the determination); see also Estate of Kappel v. Commissioner, 615 F.2d 91, 94 (3d Cir. 1980), revg. on other grounds 70 T.C. 415 (1978); O'Donnell v. Belcher, 414 F.2d 833 (5th Cir. 1969); Shields v. United States, 375 F.2d 457, 458 (6th Cir. 1967); Money v. Commissioner, supra at 48-49; Cotter v. Commissioner, 40 T.C. 506 (1963). Respondent claims that the order entered by the District Court in Delaware, upon remand from the Court of Appeals *517 for the Third Circuit, was the requisite determination because, respondent argues, it allowed a deduction for 1967 of a significant portion of the $ 19 million reduction. [13] See sec. 1313(a)(1). According to respondent, the lawsuit in the Court of Appeals for the Third Circuit involved Parent's 1967 taxable year because Parent's amended complaint sought a refund of the net deficiency of $ 4,060,184 plus the $ 6,469,651 in overassessments for 1964 and 1967. Respondent also contends that the fact that the District Court's order directed her to refund all amounts collected or credited with respect to the deficiencies (including the 1967 overassessment) means that the order "effectively spoke directly to all the years involved, including 1967." We disagree. The order of the District *518 Court for Delaware did not address the issue of whether 1967 was the proper year for Parent to deduct a significant portion of the $ 19 million reduction. The Court of Appeals for the Third Circuit also did not address this issue. [14] Moreover, neither court stated or decided that Parent was entitled to the 1967 overassessment as a matter of law. Rather, the courts held that the 1966 assessment was illegal and invalid; as a result, the District Court ordered respondent to return all amounts applied thereto. Any reference to Parent's 1967 taxable year in the opinions of either of these courts is to the source of the funds that respondent used to satisfy the assessment. The District Court needed to know the source of the funds to determine the interest that was payable on the amount that it ordered returned. Given that the tax treatment for 1967 of the $ 19 million reduction was not decided by the District Court or the Court of Appeals for the Third Circuit, we are compelled to conclude that the underlying decision was not a determination for another year (i.e., 1967) with respect to reporting erroneously the reduction for 1966. *519 Respondent argues, alternatively, that the courts need not have determined the proper year of deduction of the $ 19 million reduction because: (1) The parties agreed that the reduction for 1966 was erroneous, and (2) the effect of the courts' opinions was to allow a double deduction of the $ 19 million reduction for 1966 since respondent had allowed a significant portion of this deduction for 1967. We disagree with respondent that such a determination is not necessary to invoke the mitigation provisions. The inconsistent treatment of an item, in and of itself, is not enough to trigger the mitigation provisions. Use of these provisions necessitates a prior determination that resolves the Federal tax reporting of an item and establishes the erroneous treatment of the item for the closed year. See sec. 1311(a) (application of the mitigation provisions is preconditioned on a prior determination that is "described in one or more of the paragraphs of section 1312"); Olin Mathieson Chem. Corp. v. United States, 265 F.2d at 296; B.C. Cook & Sons, Inc. v. Commissioner, 65 T.C. at 428; see also United States v. Rachal, 312 F.2d 376, 383 (5th Cir. 1962) *520 (application of mitigation provisions requires that the facts of the case fit "into the concrete, detailed requirements set out in the statute"). Notwithstanding the fact that Form 870 may have embodied the settlement between Parent and respondent as to the proper year for deduction of the $ 19 million reduction, Form 870 is not a determination for purposes of the mitigation provisions. See Rasmussen v. United States, 811 F.2d at 951. We repeat that the period of limitations is a fundamental and essential component of our tax administration that cannot lightly be tossed aside, and these provisions are construed to preserve unimpaired the essential role of the period of limitations. As stated by the U.S. Supreme Court, the period of limitations is "established to cut off rights, justifiable or not, that might otherwise be asserted and * * * [the period of limitations] must be strictly adhered to by the judiciary. Remedies for resulting inequities are to be provided by Congress, not the courts." Kavanagh v. Noble, 332 U.S. 535, 539 (1947) (citation omitted); see also Knowles Electronics, Inc. v. United States, 365 F.2d 43, 47 (7th Cir. 1966). *521 Respondent did not meet her burden of proof even assuming, arguendo, that the lawsuit in the Court of Appeals for the Third Circuit addressed Parent's 1967 taxable year. Use of the mitigation provisions requires the timely determination of a substantive issue. See Chertkof v. Commissioner, 649 F.2d at 267; Shields v. United States, 375 F.2d 457 (6th Cir. 1967); Bolten v. Commissioner, 95 T.C. at 405; see also Nelson v. Bouchard, 279 F.2d 907, 910 (7th Cir. 1960) (mitigation provisions "cannot be invoked until after a prior determination that the * * * deductions in question were erroneously allowed and the error corrected by properly allowing them for the [earlier] year"). The need for such a substantive decision on the merits was explicitly highlighted by the conference committee of the 75th Congress which noted that the mitigation provisions applied only when -- there is a final "determination" under the income-tax laws which gives authoritative sanction to the inconsistent position presently maintained by the taxpayer or the Commissioner and indicates *522 that the previous treatment of the item was erroneous under the applicable provisions of the internal revenue laws * * * [H. Conf. Rept. 2330, 75th Cong., 3d Sess. (1938), 1939-1 C.B. (Part 2) 817, 835.]
We have located (and respondent has cited) no authority providing persuasive support for respondent's position. We decline to adopt a position that would thwart the purpose of the period of limitations and convert the mitigation provisions into a form of general equitable relief that applies in any case involving an arguable double tax benefit. Incorporating rough justice or equitable principles into the elaborate scheme of the mitigation provisions would add inestimable mischief to the rigorous statutory scheme. Adherence to the detailed requirements of this scheme is obligatory for respondent and taxpayers alike. As stated by this Court, "the mitigation provisions * * * are not formulated to provide general equitable relief to taxpayers and the Government or to cover every situation involving a double tax benefit or detriment arising out of inconsistent treatment." Bolten v. Commissioner, supra at 403. In the *523 instant case, in particular, we believe that it would not be amiss to allude to the practical difficulties of litigating Parent's entitlement to a loss for 1966 nearly 30 years after the fact. The long and short of this case is that a determination was not made for another year with respect to an item giving rise to an error. Because respondent failed to prove the presence of each of the statutory requirements, we must hold for petitioner; i.e., the mitigation provisions do not apply to the facts at hand to remove the bar on assessment for Parent's 1966 taxable year that was placed there by the period of limitations under section 6501. Knowles Electronics, Inc. v. United States, supra at 48-49. We recognize that the conclusion we reach results in a windfall to Parent, in effect allowing it a double deduction of a substantial portion of the $ 19 million reduction. Any inequity and windfall, however, are the result of the fact that the period of limitations requires eventual repose. Canelo v. Commissioner, 53 T.C. 217, 226-227 (1969), affd. 447 F.2d 484 (9th Cir. 1971). The windfall is *524 also the direct result of the lack of communication between respondent's offices to execute properly the terms of Form 870 and to assess timely a deficiency for Parent's 1966 taxable year. Given that the Congress did not enact the mitigation provisions to correct every perceived inequity that resulted from the barring of claims by the period of limitations, see Knowles Electronics, Inc. v. United States, supra at 49; Olin Mathieson Chem. Corp. v. United States, 265 F.2d at 296, we do not believe that the Congress intended by these provisions for taxpayers to assume the risk that respondent will not timely assess amounts to which she is otherwise entitled. Such a mistake on the part of respondent is a result of her own making and is not an "unfair" or "unjust" result meant to be corrected by the mitigation provisions. See United States v. Rosenberger, 235 F.2d 69, 73-74 (8th Cir. 1956); [15] see also Knowles Electronics, Inc. v. United States, supra at 48-49. Such a mistake is also not the type of manipulation that the provisions were intended to prevent. *525 See Estate of Kappel v. Commissioner, 615 F.2d 91, 96 (3d Cir. 1980), revg. on other grounds 70 T.C. 415 (1978). We have considered all arguments made by respondent and, to the extent not addressed above, find them to be without merit. For the foregoing reasons, Decision will be entered for petitioner. Footnotes
1. The petition was filed in this case by Frederic L. Hahn, Glen H. Kanwit, and Michael R. Schlessinger On Mar. 30, 1994, the Court granted the motion of Messrs. Kanwit and Schlessinger to withdraw as counsel of record.↩
2. Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, section references are to the Internal Revenue Code as applicable to the years involved.↩
3. Extoy sold its entire operating assets to an unrelated party in 1966. The sale price was $ 52,698,375. Subsequently, during Parent's 1967 taxable year, the parties agreed to reduce the sale price by $ 19 million.↩
4. Parent recognized $ 1.9 million of the remaining $ 3.8 million reduction in sale price as a capital loss for 1968, and Parent recognized the balance as a capital loss for 1971.↩
1. Form 870 lists a deficiency of $ 19,465 for Parent's 1965 taxable year. The parties have stipulated that this deficiency was $ 19,485, and the opinions of the four courts mentioned below used the higher figure. We do likewise.↩
5. Respondent could not refund or credit the overassessments without approval of the Joint Committee because the underlying amounts exceeded $ 100,000. See sec. 6405(a), I.R.C. 1954↩.
6. Respondent informed Parent of the Joint Committee's approval on June 26, 1973.↩
7. Ballard was also unaware that the Joint Committee had approved the refund or credit of Parent's 1964 and 1967 overassessments. Neither Parent nor any of respondent's agents in Chicago or Kansas City knew as of June 22, 1973, of the Joint Committee's approval.↩
8. Previously, in March 1974, Parent had filed a Form 843, Claim, requesting a $ 231,991 refund (plus interest) for its 1964 taxable year, and had filed a second Form 843 requesting a $ 6,237,660 refund (plus interest) for its 1967 taxable year.↩
9. Parent had filed claims for refund with respondent on Mar. 22, 1983, requesting refunds of $ 3,446,163.11 and $ 1,441,159.56, plus interest and penalties, for its 1966 and 1968 taxable years, respectively.↩
10. Assessment is the ministerial act of recording a taxpayer's Federal tax liability in the office of the District Director. Sec. 6203; sec. 301.6203-1, Proced. & Admin. Regs. After a tax has been assessed, the Commissioner may proceed to collect the assessed amount. Sec. 6303(a).↩
11. Sec. 7482(b)(1) and (2) provides that, absent the parties' written stipulation to the contrary, decisions of this Court "may be reviewed by the United States court of appeals for the circuit in which is located -- * * * (B) in the case of a corporation seeking redetermination of tax liability, the principal place of business or principal office or agency of the corporation" determined when the petition was filed. When the petition was filed in the instant case, petitioner was a Delaware corporation with its principal place of business in the Seventh Circuit.↩
12. Parent filed its 1967 claim for refund in March 1974, which was over 6 months after respondent allowed the refund for 1967.↩
13. Respondent does not claim that the final order of the District Court in Illinois was the requisite determination. We do not think that it was, either. Even if it were, the notice of deficiency would be out of time under sec. 1314(b).↩
14. Indeed, respondent does not dispute these facts. As she stated on brief: "Respondent does not deny that in the Third Circuit litigation the courts were not requested to resolve, and the courts did not resolve, the proper year for the deduction."↩
15. As stated by the Court of Appeals for the Eighth Circuit, the mitigation provisions were enacted -- to provide a fair and workable formula under which taxpayers and the Government would be given relief from the unfair and unjust results occasioned by corrections, by final determinations, of errors of either the taxpayer or the Commissioner of Internal Revenue, or both, in connection with proper treatment of items affecting taxable income and tax liability in more than one year. [United States v. Rosenberger, supra↩ at 73-74 (quotation marks and citation omitted).]