72 F.3d 1338
 77 A.F.T.R.2d 96-372, 96-1 USTC P 50,037
 FRUIT OF THE LOOM, INCORPORATED, transferee of the assets
of, and primarily liable as successor by merger to,
Northwest Industries, Incorporated, transferee of the assets
of, and primarily liable as successor by merger to,
Philadelphia & Reading Corporation, Petitioner-Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
 No. 95-1216.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 26, 1995.
Decided Jan. 5, 1996.
 
 Frederic L. Hahn, Roger J. Jones, Thomas C. Durham (argued), Thomas L. Kittle-Kamp, Mayer, Brown & Platt, Chicago, IL, for Fruit of the Loom, Incorporated.
 Stuart L. Brown, Thomas J. Kane, I.R.S., Washington, DC, Gary R. Allen, David I. Pincus, Thomas J. Clark (argued), Department of Justice, Tax Division, Appellate Section, Washington, DC, Deborah Butler, I.R.S., Office of Regional Counsel, Dallas, TX, for C.I.R.
 Before BAUER, MANION, and KANNE, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 In 1966 a predecessor to Fruit of the Loom sold assets to a purchaser that ultimately failed to pay $19 million. The loss justified a tax deduction. The problem here is that the IRS claims the company, due partly to procedural mishaps, was able to realize the full deduction twice, resulting in a "double counting." We consider whether the Internal Revenue Service can invoke the mitigation provisions of the Internal Revenue Code to collect additional taxes from taxpayer to rectify this "double counting" by assessing a tax deficiency which otherwise would be barred by the applicable statute of limitations. Because the Commissioner has not met her burden of proof to invoke the mitigation provisions as an exception to the statute of limitations, we affirm the decision of the tax court.
 
 I.
 A. Factual and Procedural Background
 
 2
 Some thirty years ago the Philadelphia & Reading Corporation originally claimed the tax deduction at issue in this case.[1] In 1966, one of taxpayer's subsidiaries, Extoy Corporation, sold its operating assets. As part of that sale the buyer gave the taxpayer a $19 million note. In 1967, because of the buyer's financial problems, the note was cancelled. Taxpayer subsequently prepared its 1966 tax return on which it reduced the amount realized on the Extoy sale by the face amount of the cancelled $19 million note.
 
 
 3
 In fall 1972 the Commissioner of Internal Revenue completed an audit of taxpayer's 1964-68 taxable years. A principal issue in the audit was the $19 million reduction in sale price claimed for Extoy for 1966. The facts surrounding this audit are developed in detail in the tax court's opinion, Fruit-Of-The-Loom, Inc. v. Commissioner, 68 T.C.M. (CCH) 867, 868, 1994 WL 542862 (1994), with which this opinion assumes familiarity.
 
 
 4
 During the audit one of Commissioner's examining agents disallowed the Extoy loss deduction for 1966 on the ground that the reduction in sale price did not occur until 1967 and therefore was not properly deductible until that tax year. After a series of discussions, the parties agreed to resolve the issues raised in the audit, including the Extoy loss issue. The parties memorialized the terms of this resolution in an IRS Form 870, which listed deficiencies for tax years ending 1965, 1966, and 1968, and overassessments for tax years ending 1964 and 1967. Specifically with regard to the Extoy loss, taxpayer and the Commissioner agreed that the $19 million deduction should be disallowed for 1966, but that $15.2 million of the reduction in sale price could be deducted in 1967 and the remaining $3.8 million would be allocated to a warrant taxpayer received to purchase stock.
 
 
 5
 Because taxpayer did not want Commissioner to assess the deficiencies until the Joint Committee on Internal Revenue Taxation ("Joint Committee") approved the overassessments, the Form 870 expressly delayed the assessments until the IRS authorized the overassessments. The parties executed the Form 870 in December 1972.
 
 
 6
 As a result of an internal communication problem certain qualifying language in the Form 870 was overlooked. One of Commissioner's employees assessed deficiencies in February 1973 without issuing taxpayer a notice of deficiency and while the Joint Committee was still reviewing the overassessments. After taxpayer complained about a bill for the premature assessments, the Commissioner's employee abated them and sent notice of such to the taxpayer. In the meantime the Joint Committee approved a refund of the overassessments in June 1973. The Commissioner then secured an extension of the limitations period for the deficiency years 1965, 1966, and 1968 to September 30, 1973.
 
 
 7
 In June 1973 a second, more serious communication breakdown occurred. Unaware that the limitations period had been extended, the same employee of Commissioner reassessed deficiencies for the years 1965, 1966, and 1968. Despite being informed of the error, Commissioner refused to abate the assessment, although she did stay any collection until the overassessments had been credited. The taxpayer must receive notice of such a deficiency before any assessment becomes final. However, Commissioner failed to issue a notice of deficiency for the 1965, 1966, and 1968 tax years before the extended statute of limitations expired on September 30, 1973.
 
 
 8
 In November 1973 Commissioner initiated proceedings against taxpayer to collect the June 1973 deficiency assessments. Taxpayer filed suit in the United States District Court for the Northern District of Illinois to enjoin Commissioner from collecting these taxes, alleging that Commissioner had neither issued a notice of deficiency nor complied with the conditions in the Form 870 waiver. The district court ruled Commissioner's assessment illegal and enjoined the Commissioner from collecting any amount in excess of the net deficiency (i.e., the deficiency amount less the overassessment amount, an offset total of $4,060,184). Philadelphia & Reading Corp. v. Beck, 81-1 U.S.T.C. p 9180 (CCH), 1980 WL 1734 (N.D.Ill.1980). But the district court also ruled that taxpayer had failed to establish the requisite harm for injunctive relief to stay collection of the net deficiency. Id. This court affirmed that ruling. Philadelphia & Reading Corp. v. Beck, 676 F.2d 1159 (7th Cir.1982) ("P & R I ").
 
 
 9
 Commissioner collected the net deficiency in 1983 by levying taxpayer's bank account in Chicago. Taxpayer sued the United States in the United States District Court for the District of Delaware in November 1983 for a refund of the 1966 and 1968 deficiencies and later amended that complaint to request a refund of the 1965 deficiencies as well. The U.S. district court in Delaware found the June 1973 assessments illegal and invalid but denied relief to taxpayer on the ground that it had previously obtained the benefits of the overassessments without suffering any material detriment. Philadelphia & Reading Corp. v. United States, 738 F.Supp. 143, 149 (D.Del.1990). The Third Circuit reversed, 944 F.2d 1063 (3d Cir.1991) ("P & R II "), holding that all amounts collected pursuant to the illegal and invalid assessments for taxpayer's 1965, 1966, and 1968 tax years must be refunded to the taxpayer. The Third Circuit noted that while this court's decision in P & R I was correct because equitable considerations must apply in an injunction proceeding, such considerations did not apply in a purely legal refund suit. 944 F.2d at 1073-75. On remand, the district court ordered Commissioner to refund to taxpayer federal income taxes, penalties, and interest totaling $59,897,232.68.
 
 
 10
 After P & R II, Commissioner issued a notice of deficiency to taxpayer for the 1966 tax year, asserting that the mitigation provisions of the Internal Revenue Code allowed it to reopen the closed 1966 tax year to determine a tax deficiency. Commissioner asserted that P & R II had allowed taxpayer a "deduction" for a loss taxpayer took in 1967, thus permitting the IRS to use the mitigation provisions to prevent a "double deduction" of that loss in 1966 and 1967. Taxpayer challenged this notice of deficiency in the tax court. The "double deduction" is at the core of this case.
 
 
 11
 B. The Mitigation Provisions of the Internal Revenue Code
 
 
 12
 The mitigation provisions of the Internal Revenue Code, 26 U.S.C. Secs. 1311-1314, "allow both the Commissioner and the taxpayer to correct an error made in a prior closed tax year and to obtain an adjustment to tax liability despite the running of the ordinary period of limitations." O'Brien v. United States, 766 F.2d 1038, 1041 (7th Cir.1985). This court has noted, however, that "Congress did not intend to provide relief in all situations in which just claims are precluded by statutes of limitations" and has recognized the need for limitations statutes despite the harsh results they sometimes cause to taxpayers and the government alike. Olin Mathieson Chem. Corp. v. United States, 265 F.2d 293, 296 (7th Cir.1959). The relief provided by the mitigation statutes "is limited to defined circumstances, and 'does not purport to permit the correction of all errors and inequities.' " Provident Nat. Bank v. United States, 507 F.Supp. 1197, 1200 (E.D.Pa.1981) (quoting Brennen v. Commissioner, 20 T.C. 495, 500, 1953 WL 70 (1953)).
 
 
 13
 The party who attempts to invoke the mitigation provisions, in this case the Commissioner, bears the burden to prove that their specific requirements have been met. O'Brien, 766 F.2d at 1042. As the tax court noted below, for the mitigation provisions to apply:
 
 
 14
 1. An error must have occurred in a taxable year which cannot otherwise be corrected by operation of law; I.R.C. Sec. 1311(a);
 
 
 15
 2. there was a determination for another year with respect to the item giving rise to the error; id.; see also I.R.C. Sec. 1313(a) (definition of the term "determination");
 
 
 16
 3. the determination was within one of the categories enumerated in I.R.C. Sec. 1312 as a circumstance of a deduction; see I.R.C. Secs. 1311(a), 1312(2); and
 
 
 17
 4. the party who prevailed in the determination maintained a position that was adopted there and that was inconsistent with the erroneous treatment. I.R.C. Sec. 1311(b).
 
 
 18
 68 T.C.M. at 871. Considering the equitable purpose behind the provisions, this court has found it important that they be given "a liberal and remedial interpretation." O'Brien, 766 F.2d at 1042, citing inter alia Olin Mathieson, 265 F.2d at 297. Failure to prove that each of these requirements has been met precludes invocation of the mitigation provisions. O'Brien, 766 F.2d at 1042.
 
 C. The Tax Court Opinion
 
 19
 The tax court considered only the second of the four requirements listed above and found that because the Commissioner had failed to meet her burden of proof as to this element, the Internal Revenue Service was not entitled to mitigation.
 
 
 20
 Commissioner argued below that an error occurred when the taxpayer deducted, and the Third Circuit allowed, $19 million in tax year 1966. She asserted that that amount should have been deductible instead for tax year 1967. The second requirement of the mitigation provision requires there to have been a "determination" for the earlier year. I.R.C. Sec. 1313(a) defines "determination" as:
 
 
 21
 1. a decision by the tax court or a judgment, decree, or other order by any court of competent jurisdiction which has become final;
 
 
 22
 2. a closing agreement;
 
 
 23
 3. a final disposition by the Secretary of a claim for refund; or
 
 
 24
 4. an agreement related to the liability with respect to the tax.
 
 
 25
 After consideration of the Commissioner's submissions and detailed review of the record, the tax court concluded that the Delaware U.S. district court order upon remand and the Third Circuit opinion were not "determinations" because they did not address the issue of whether 1967 was the proper year for taxpayer to deduct a significant portion of the $19 million. Instead, any reference to taxpayer's 1967 tax year in the decisions of either of these courts was to the source of the funds that taxpayer used to satisfy the assessment. Id. at 873.
 
 
 26
 Because a determination is necessary to invoke the mitigation provisions, and the statute of limitations is a fundamental and essential legal rule that cannot be easily ignored, the tax court concluded that decision should be entered for taxpayer. 68 T.C.M. at 873. The tax court recognized that its conclusion resulted in a windfall to taxpayer, in effect allowing taxpayer a "double deduction" of a substantial portion of the $19 million. But the tax court also opined that any inequity resulted from the statute of limitations and the lack of communication among Commissioner's offices to properly execute the terms of the Form 870 and to timely assess a deficiency for the 1966 tax year. Id. at 874.
 
 
 27
 The tax court properly had jurisdiction over this case pursuant to 26 U.S.C. Sec. 7442. This court properly has jurisdiction pursuant to 26 U.S.C. Sec. 7482(a)(1), and is the proper venue for this case pursuant to 26 U.S.C. Sec. 7482(b)(1)(B).[2]
 
 II.
 
 28
 Taxpayer reduced its liability for tax year 1966 by claiming the Extoy loss. Taxpayer also filed a claim for refund for its 1967 tax year, and the final judgment in P & R II allowed taxpayer the loss deduction in 1967 as well. The question before this court is whether the tax court erred in holding that the mitigation provisions do not allow Commissioner to reopen taxpayer's 1966 tax year so as to disallow the "double deduction" for the Extoy loss in both the 1966 and 1967 tax years.
 
 
 29
 On appeal Commissioner argues that she has met the requirements to invoke the mitigation provisions (see O'Brien, 766 F.2d at 1042) and to ignore the statute of limitations. First, Commissioner submits that when, on remand from the Third Circuit, the U.S. district court in Delaware entered judgment for taxpayer and awarded a refund for the 1966 and 1967 tax years, a court of competent jurisdiction issued a "determination" as that term is defined in the tax code. Second, she asserts that the final judgment of the U.S. district court in Delaware "allowed" taxpayer a deduction that was erroneously allowed in another tax year. Third, Commissioner contends that taxpayer's claim for a refund for 1967 due to the Extoy loss was inconsistent with the allowance of that same deduction for 1966. For these reasons she asserts the mitigation provisions allow her to seek relief from the statute of limitations and permit her to assess a tax deficiency against taxpayer.
 
 
 30
 This court applies "the same standards of review to a tax court's decision that we apply to district court determinations in a civil bench trial: We review questions of law de novo; we review factual determinations, as well as application of legal principles to those factual determinations, only for clear error." Cline v. Commissioner of Internal Revenue, 34 F.3d 480, 484 (7th Cir.1994) (citation omitted).
 
 
 31
 Our point of departure in this case is that, absent mitigation, the statute of limitations bars any assessment of taxes for taxpayer's 1966 tax year. In enacting the mitigation provisions, Congress did not intend to provide plenary relief in each circumstance involving a double tax benefit. O'Brien, 766 F.2d at 1041. Rather, Congress intended to "preserve unimpaired the essential function of the statute of limitations." See S.Rep. No. 1567, 75th Cong., 3d Sess. 49, reprinted in 1939-1 C.B. (Pt. 2) 779, 815. Consequently, to ensure that relief under the mitigation provisions would be afforded only in limited circumstances, Congress delineated the specific requirements listed above, each of which Commissioner must establish. We now consider the circumstances of this case under those requirements.
 
 
 32
 A. The Final Judgment in P & R II As A "Determination" Under I.R.C. Sec. 1313
 
 
 33
 The tax court concluded that P & R II did not involve any issues regarding taxpayer's 1967 year, and that the only question in that case was whether the 1966 assessment was illegal and invalid. 68 T.C.M. at 868. The court reasoned that any references to taxpayer's 1967 tax year in P & R II were only to the source of funds used to satisfy the 1966 assessment at issue in the case. Id. at 873. Accordingly, it held that Commissioner had not established that there was a "determination" for tax year 1967 with respect to the item giving rise to the alleged error in 1966, and consequently that she could not invoke the mitigation provisions in this case. Id. at 873-74.
 
 
 34
 In this appeal Commissioner asserts that in P & R II the Third Circuit and the U.S. district court in Delaware on remand in fact considered taxpayer's 1967 tax year, and therefore that there was a "determination" made in this case for that year. Commissioner argues that the judgment in P & R II could not have been based solely on the 1965, 1966, and 1968 taxable years, but must have included 1967 as well ("albeit implicitly"; App.Br. p. 23).[3] Commissioner's argument boils down to the proposition that the U.S. district court in Delaware on remand from the Third Circuit had jurisdiction to enter judgment in taxpayer's favor only by implicitly allowing taxpayer the Extoy loss deduction in 1967. She submits that the timing of the taxpayer's refund claims and the allegations in the complaint and amended complaint dictate that taxpayer placed its 1967 tax year directly at issue in P & R II. It follows, Commissioner reasons, that the U.S. district court in Delaware "implicitly allowed" that deduction in 1967. She asserts that in 1973 taxpayer "paid" $6.2 million in taxes for 1967, and that since that payment could not have been included in taxpayer's 1966 and 1968 refund claims, the Third Circuit in P & R II necessarily ruled on taxpayer's 1967 refund claims. From this Commissioner maintains that the statutory requirement of a "determination" has been satisfied.
 
 
 35
 Although an intriguing argument, the record--including Commissioner's own stipulations--undercuts her reasoning. The parties stipulated that P & R II did not involve taxpayer's 1967 tax liability. In the tax court the parties stipulated to the issues decided by the Third Circuit in P & R II. Among those stipulations is the following:
 
 
 36
 The sole basis asserted by P & R in the Third Circuit litigation for its entitlement to a refund was that the June 22, 1973, assessments in respect of P & R's 1965, 1966, and 1968 taxable periods were illegal and invalid and that no legal and valid assessments had been made in respect of those periods prior to the expiration of the applicable statute of limitations.
 
 
 37
 App.Ap. p. 13, p 32. Commissioner also agreed that "[t]he litigation in the Third Circuit did not address the question of whether any deductions taken by [taxpayer] were proper." Id. at p 33. These stipulations by Commissioner preclude her from asserting that the Third Circuit in P & R II somehow considered taxpayer's 1967 taxable year and made a "determination" thereon.
 
 
 38
 Commissioner responds to these facts by arguing that if the Third Circuit in P & R II did not in fact consider taxpayer's 1967 tax year, it also could not have granted the relief it did: a $10.5 million refund. She reasons that when taxpayer amended its complaint in P & R II to claim a refund of an overpayment of $6.2 million, it placed its 1967 tax year at issue because the only timely claim for refund taxpayer filed for that overpayment was the one filed in March 1974 for its 1967 tax year. Commissioner concludes that by awarding taxpayer the relief it originally requested in its March 1974 administrative refund claim, the court in P & R II necessarily allowed taxpayer the Extoy loss deduction in 1967. She thus proposes that the logical consequence of the tax court's reasoning is that the Third Circuit awarded taxpayer a $4 million refund for 1966 based upon the invalidity of assessments, but could not have awarded an additional $6.2 million refund.
 
 
 39
 The record again belies Commissioner's argument. First, the March 1974 administrative refund claim does not produce the dilemma proposed by Commissioner. If taxpayer paid $10.5 million in tax in 1983 by paying the net deficiency of $4 million,[4] and the 1966 and 1968 refund claims were timely filed (within two years of the 1983 payment), the Third Circuit had authority to grant $10.5 million in refunds based on the 1966 and 1968 refund claims alone. Taxpayer's payment of the net deficiency evaporates this dilemma. Second, taxpayer's complaint filed in the U.S. district court for Delaware requested a refund of 1966 and 1968 taxes, but did not seek a refund of 1967 taxes. Third, when taxpayer realized that it had not correctly stated the amounts due it as a result of its 1966 and 1968 refund claims, it amended its complaint to include the total sum of the deficiencies for the tax years in question, rather than just the net deficiency. By expanding the years at issue to include 1965, the amended complaint did not have to, and did not, request the recovery of any overpayments from 1967. This is evidenced by the amended complaint, which did not alter p 7 of the complaint, but instead recited that taxpayer had filed timely refund claims for 1966 and 1968, but not 1967.
 
 
 40
 Taxpayer's amended complaint requested a total refund of approximately $10.5 million in tax, plus interest, an amount the Third Circuit understood had been illegally assessed on June 22, 1973, and did not include the 1967 tax year. The record is barren of any indication that the Third Circuit ruled on the 1967 refund claim or taxpayer's 1967 tax year. In fact, it is doubtful whether the courts could have, as neither the complaint nor the amended complaint placed the 1967 tax year at issue.[5] This record evidence convinces us that the tax court's application of legal principles to the facts on this question was not clearly erroneous.
 
 
 41
 Based on the stipulated facts and the Third Circuit's reasoning, the tax court concluded correctly that the courts in P & R II did not consider taxpayer's 1967 tax year, and thus that Commissioner has not established that there was a "determination" made pursuant to I.R.C. Sec. 1313 in this case for tax year 1967 with respect to the item giving rise to the alleged error in 1966.
 
 
 42
 B. The Final Judgment in P & R II As Allowing Taxpayer A Deduction For The Extoy Loss in 1967
 
 
 43
 Even if Commissioner had established the existence of a "determination" for 1967, this would be only the first hurdle to clear before she could invoke the mitigation provisions to permit an assessment of a tax deficiency when such an assessment would otherwise be barred by the applicable statute of limitations. The determination must also be "described in one ... of the paragraphs of section 1312." I.R.C. Sec. 1311(a). Under I.R.C. Sec. 1312(2)--the only relevant paragraph in that section--the "determination" for 1967 must "allow[ ] a deduction ... which was erroneously allowed to the taxpayer for another taxable year." I.R.C. Sec. 1312(2).
 
 
 44
 This section of the Internal Revenue Code mitigating the effect of a limitations period must be construed strictly in light of its legislative history and the accepted technical meaning of its terms. Sherover v. United States, 137 F.Supp. 778, 780 (S.D.N.Y.1956), aff'd, 239 F.2d 766 (2d Cir.1956). A "determination" as delineated in I.R.C. Sec. 1312 gives
 
 
 45
 authoritative sanction to the inconsistent position presently maintained by the taxpayer ... and indicates that the previous treatment of the item was erroneous under the applicable provisions of the internal revenue laws.
 
 
 46
 H.R.Conf.Rep. No. 2330, 75th Cong., 3d Sess. 56 (1938), reprinted in 1939-1 C.B. (part II) 817, 835. Thus, to constitute an "allowance" of a deduction, the court's decision must affirmatively approve the deduction in the year the court has under consideration, establishing that the deduction in another, closed year, was erroneous.
 
 
 47
 The tax court concluded correctly that a "determination" must involve a substantive decision on the merits, which establishes that the inconsistent position in the closed year is erroneous. 68 T.C.M. at 873-74 (citing inter alia Nelson v. Bouchard, 279 F.2d 907, 910 (7th Cir.1960)). To admit the contrary could allow the mitigation provisions to be used as a general tool for equity beyond their statutory constraints, a result we have committed against in the past (see Olin Mathieson, 265 F.2d at 296) and do so here as well.
 
 
 48
 Given this law, to fulfill this requirement the Third Circuit's decision must authoritatively establish that the Extoy loss was allowable in 1967 and not in 1966. Yet even a cursory review of the P & R II opinion demonstrates that the proper treatment of the Extoy loss was not addressed in the Third Circuit's decision, which dealt only with tax year 1966. The opinion did not even discuss the proper tax treatment of the Extoy sale, much less determine the matter in a way which "necessarily implies" that the treatment of the Extoy loss in 1966 was incorrect. Rather, the Third Circuit's opinion addressed the legality and validity of the June 1973 assessments. 944 F.2d at 1072-73. It also must be remembered that the Commissioner stipulated that P & R II did not address whether the Extoy loss was properly allowable in 1966 or 1967.
 
 
 49
 Commissioner's contention that the Third Circuit "implicitly" allowed a loss for 1967 also is not well-grounded. The P & R II opinion held only that the collection of assessed deficiencies for 1965, 1966, and 1968 was barred because Commissioner had failed to follow the procedures required for the lawful assessment of deficiencies. 944 F.2d at 1073. Nothing in the opinion speaks to the correctness of taxpayer's treatment of the Extoy loss on its 1966 tax return. Even if a determination had been made, Commissioner has not satisfied us that such a determination was erroneously allowed to the taxpayer for another taxable year. Therefore, the "allowance" requirement of Sec. 1312(2) has not been met.
 
 
 50
 C. Whether Taxpayer Took Inconsistent Positions In 1966 and 1967
 
 
 51
 Even if a determination had been made for the 1967 taxable year, and that determination resulted in a "double deduction," the Commissioner must also establish that the determination adopted a position maintained by taxpayer in 1967 which was inconsistent with the result in 1966. I.R.C. Sec. 1311(b)(1)(B).
 
 
 52
 Commissioner avers that because taxpayer's claim in P & R II allegedly was based in part on its administrative claim for refund for tax year 1967, taxpayer's position that it was entitled to a refund for 1967 on account of its Extoy loss was inconsistent with the erroneous allowance of that deduction in 1966.
 
 
 53
 To satisfy this requirement, taxpayer would have had to claim a refund for 1967 based on the allowance of the Extoy loss in 1967. But as we concluded above, P & R II did not address taxpayer's 1967 taxable year. The amended complaint in P & R II did not request a refund for 1967 nor did it request a refund for the Extoy loss. Rather it was limited to a claim that the June 1973 assessments for 1965, 1966, and 1968 were illegal and invalid. Commissioner conceded each of these points. Because the treatment of the Extoy loss did not pertain to the Third Circuit's decision in P & R II, it could not have adopted any arguments concerning that loss.
 
 
 54
 Any inconsistent treatment of the Extoy loss resulted not from Commissioner's earlier decision to allow the Extoy loss in 1967, but her failure to issue a timely assessment for 1966. She conceded this in the tax court:
 
 
 55
 [Commissioner] acknowledges that the refund did not result from an inconsistent litigating position of [taxpayer] specifically with respect to the correct year for the deduction but instead from the effect of the running of the statute.
 
 
 56
 Resp.App. 34. We conclude that taxpayer has not maintained an inconsistent position with regard to the allowance of the Extoy loss in 1967. Accordingly, Commissioner has not satisfied this final requirement of the mitigation provisions.
 
 III.
 
 57
 The tax court correctly held that P & R II did not involve a determination for taxable year 1967, and that the mitigation provisions therefore could not be applied to reopen the taxpayer's 1966 tax year. Moreover, Commissioner has not borne her burden of proof on each of the other requirements necessary to invoke the mitigation provisions. As she conceded at oral argument, failure on even one of these requirements is fatal to her case. Accordingly, Commissioner cannot invoke the mitigation provisions of the Internal Revenue Code to permit an assessment of a tax deficiency against taxpayer which is barred by the applicable statute of limitations. The opinion of the tax court is
 
 
 58
 AFFIRMED.
 
 
 
 [1]
 In 1985 Philadelphia & Reading merged into Northwest Industries, which later merged into Fruit-Of-The-Loom, Inc., a Delaware corporation with its principal place of business in Chicago, Illinois. For purposes of this opinion, Philadelphia & Reading and its successors will be referred to as "taxpayer."
 
 
 [2]
 This statute provides that a decision of the tax court may be reviewed by the U.S. Court of Appeals for the circuit in which is located the case of a corporation seeking redetermination of tax liability, or the principal place of business of the corporation. The principal place of business of Fruit Of The Loom, Inc. (taxpayer) is Chicago, Illinois
 
 
 [3]
 Taxpayer argues that Commissioner has raised this argument for the first time on appeal. Our review of Commissioner's briefs in the tax court convinces us that she at least raised the argument that the final judgment in P & R II allowed taxpayer the Extoy loss in 1967 by awarding it a refund for that year
 
 
 [4]
 Application of the 1964 and 1967 refunds ($6.5 million) against the 1965, 1966, and 1968 deficiencies ($10.5 million), which results in a net deficiency of $4 million
 
 
 [5]
 The Commissioner makes a final stab to convince us that a determination has been made. She submits that even if taxpayer had not placed the 1967 tax year at issue in P & R II, the government put it in play by raising the doctrine of equitable recoupment as a defense to taxpayer's refund claim. That doctrine "permit[s] a transaction which is made the subject of suit by plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." United States v. Dalm, 494 U.S. 596, 611, 110 S.Ct. 1361, 1370, 108 L.Ed.2d 548 (1990) (quote omitted). The Commissioner reasons that in P & R II, taxpayer ultimately sought to obtain the benefit of the Extoy tax loss in 1966 and 1967. The Commissioner disputed this attempt. The U.S. district court in Delaware agreed with the Commissioner, and held that taxpayer would receive an unjust windfall. 738 F.Supp. at 149. On this issue the Third Circuit reversed, 944 F.2d at 1075-76. The Third Circuit correctly held that equitable recoupment was limited to "single year situations," 944 F.2d at 1075, and could not reach years or events not included in the plaintiff's cause of action. Id. at 1076. This court will not revisit and reconsider the Third Circuit's decision not to apply equitable recoupment based on the 1967 refund